

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-17-00160-CV

**ROBERT B. JAMES, DDS, INC.**; Robert B. James, DDS, Individually; Jean James, Individually; and Alexis Mei Pyles, Individually,
Appellants

v.

Cassandra J. **ELKINS**, DDS
Appellee

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-19860
Honorable Karen H. Pozza, Judge Presiding

Opinion by:　Irene Rios, Justice
Concurring and Dissenting Opinion by: Marialyn Barnard, Justice

Sitting:　　Marialyn Barnard, Justice
　　　　　　Luz Elena D. Chapa, Justice
　　　　　　Irene Rios, Justice

Delivered and Filed:　May 30, 2018

AFFIRMED IN PART, REVERSED AND RENDERED IN PART, REMANDED

This is an appeal from a trial court's order denying two motions to dismiss under the Texas Citizens Participation Act (TCPA). In this appeal, we must determine whether the TCPA applies to Cassandra J. Elkins, DDS's legal actions and, if so, whether Dr. Elkins established by clear and specific evidence each element challenged on appeal. As explained in this opinion, we affirm as to some legal actions, reverse and render a dismissal as to others, and remand for a determination of attorney's fees and costs as to the dismissed legal actions.

**BACKGROUND**

In 1991, Robert James, DDS hired Dr. Elkins to work at his San Antonio-based pediatric dental practice, Robert B. James, DDS, Inc. ("the Practice"). Dr. James and Dr. Elkins signed a written employment contract providing the terms of Dr. Elkins's compensation. Dr. Elkins worked for the Practice for twenty-three years and, according to her, the Practice consistently paid her 30% of her gross production. Dr. James hoped that when he retired, Dr. Elkins would purchase the Practice. But when he offered to sell the Practice to Dr. Elkins, she declined.

Dr. James had his wife, Jean James, investigate Dr. Elkins's payroll history, and Jean sought the help of the Practice's administrator, Alexis Mei Pyles. Dr. James informed Jean and Pyles that, under Dr. Elkins's employment contract, she should have been paid only 30% of net production, a calculation based on collections and not gross production. Jean and Pyles reviewed financial records for the prior three years and found Dr. Elkins was being paid 30% of gross production. Pyles prepared a Fraud Examination Report, concluding that Dr. Elkins misappropriated over $350,000. When Jean and Pyles informed Dr. James of their findings, Dr. James decided to terminate Dr. Elkins's employment. Thereafter, Jean and Pyles reported Dr. Elkins's alleged theft to the San Antonio Police Department (SAPD). During the SAPD's investigation, Dr. James, Jean, and Pyles each made statements to the SAPD alleging Dr. Elkins stole money from the Practice. The Practice also made an insurance claim based on Dr. Elkins's purported theft with its insurer, Travelers Casualty Insurance Company. Dr. Elkins was later indicted and arrested.

Dr. Elkins sued the Practice, Dr. James, Jean, and Pyles, alleging various causes of action against them. Her theories of liability included defamation, business disparagement, intentional infliction of emotional distress, and civil conspiracy. The Practice, Dr. James, and Jean (collectively "the James Appellants") filed a partial motion to dismiss under the TCPA; Pyles filed

a separate TCPA motion to dismiss. Dr. Elkins responded by producing her affidavit, records from the Practice, the Fraud Examination Report, the SAPD report, Dr. James's and Jean's written statements to the SAPD, and other documents. Dr. Elkins also filed a motion for continuance and for discovery, which the trial court denied. No party produced the employment contract, which had been lost over the years.

After hearing the motions to dismiss, the trial court signed an order denying both motions without specifying the basis for its order. The James Appellants and Pyles filed a joint motion to reconsider, attaching additional evidence it alleged was newly discovered. In response, Dr. Elkins produced additional evidence to dispute the authenticity of the evidence attached to the joint motion. The trial court signed an order denying the joint motion, and this appeal followed.

### APPLICABLE LAW & STANDARD OF REVIEW

If a legal action is based on, relates to, or is in response to a party's exercise of First Amendment rights listed in the TCPA, that party "may file a motion to dismiss the legal action." TEX. CIV. PRAC. & REM. CODE. § 27.003 (listing rights of free speech, association, and petition); *see Reyna v. Baldridge*, No. 04-14-00740-CV, 2015 WL 4273265, at *1 (Tex. App.—San Antonio July 15, 2015, no pet.) (mem. op.). The TCPA's dismissal procedure contains a burden-shifting framework to ensure the legal actions to which the TCPA applies have merit and are not brought to intimidate or silence those who exercise First Amendment rights listed in the TCPA. *See Youngkin v. Hines*, No. 16-0935, 2018 WL 1973661, at *2 (Tex. Apr. 27, 2018). However, the TCPA exempts several categories of legal actions from its dismissal procedure. § 27.010.

We review de novo the denial of a TCPA motion to dismiss and whether the parties satisfied their respective burdens as set out in the TCPA. *Reyna*, 2015 WL 4273265, at *2. In our review, we must "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." § 27.006(a); *see In re Lipsky*, 460 S.W.3d 579, 587

(Tex. 2015) (orig. proceeding). We view the pleadings and evidence in the light most favorable to the nonmovant. *See Spencer v. Overpeck*, No. 04-16-00565-CV, 2017 WL 993093, at \*4 (Tex. App.—San Antonio Mar. 15, 2017, pet. denied) (mem. op.).

**THE INSURANCE CONTRACT EXEMPTION IN SECTION 27.010(d)**

Dr. Elkins argues we should affirm the trial court's order in its entirety because, even if her legal actions relate to Pyles's and the James Appellants' exercise of their First Amendment rights, the TCPA does not apply because her legal actions fall under the insurance contract exemption. The TCPA exempts "a legal action . . . arising out of an insurance contract." § 27.010(d). The TCPA broadly defines a "legal action," which can mean a "lawsuit" or a "cause of action." § 27.001(6); *accord D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 442 (Tex. 2017). The TCPA does not further define "cause of action," but "a 'cause of action' means the fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief." *Loaisiga v. Cerda*, 379 S.W.3d 248, 262 (Tex. 2012) (internal quotation marks omitted). It is undisputed that this case involves the Practice's insurance policy with Travelers and Dr. Elkins has alleged causes of action. The only dispute about the insurance contract exemption is whether the alleged facts entitling Dr. Elkins to relief (i.e. her causes of action) are legal actions "arising out of" the insurance policy with Travelers.

**A. Legal Actions "Arising Out of an Insurance Contract"**

Whether Dr. Elkins's causes of action arise out of the insurance contract requires construing the phrase "arising out of" in the TCPA. We review issues of statutory construction de novo. *Adams v. Starside Custom Builders, LLC*, No. 16-0786, 2018 WL 1883075, at \*3 (Tex. Apr. 20, 2018). "Our fundamental goal when reading statutes is to ascertain and give effect to the Legislature's intent." *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017) (internal quotation marks omitted). "[T]he [TCPA]'s plain language

is the surest guide to the Legislature's intent." *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (internal quotation marks omitted). We must presume the Legislature purposefully chose the statute's language, intending each word used to have a purpose. *Cadena Comercial USA Corp.*, 518 S.W.3d at 325-26. Statutory words and phrases must be considered "in the context of the statute as a whole." *Id.* at 326.

### 1. Pyles's & the James Appellants' Construction is Contrary to the TCPA's Text

Pyles and the James Appellants argue that Dr. Elkins's causes of action do not "arise out of" an insurance contract because Dr. Elkins is not seeking a remedy provided for in the insurance policy, specifically insurance benefits, and her theories of liability sound in common-law torts, not in contract. These arguments are contrary to the TCPA's plain language in at least four ways. First, in the insurance contract exemption, the Legislature used the term "legal action," which is defined as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." § 27.001(6). The definition of "legal action" does not contain the term "remedy." A "cause of action" consists of the operative facts entitling the plaintiff to the relief sought. *See Loaisiga*, 379 S.W.3d at 262. The relief sought is the "remedy." BLACK'S LAW DICTIONARY 1320 (8th ed. 2006) (defining "remedy" as "legal or equitable relief"). Thus, under the insurance contract exemption, if the _facts_ comprising a cause of action arise out of an insurance contract, the _remedy_ requested need not arise out of the insurance contract. *See* §§ 27.001(6), 27.010(d).

Second, the insurance contract exemption in 27.010(d) contrasts with section 27.010(c), which exempts legal actions "_seeking recovery for_ bodily injury, wrongful death, or survival." § 27.010(c) (emphasis added). The insurance contract exemption in section 27.010(d) does not exempt legal actions "seeking recovery for benefits under" an insurance contract. Similarly, the insurance contract exemption in 27.010(d) contrasts with other statutory provisions, such as the

Texas Tort Claims Act, that refer to the nature of exempted claims. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 101.057(2) (exempting claims "arising out of assault, battery, false imprisonment, or any other intentional tort"). The insurance contract exemption simply contains no reference to the nature of the exempted claims. Thus, the plain language of section 27.010(d) exempts legal actions "arising out of" an insurance contract, regardless of whether the legal action is "seeking recovery for benefits under" an insurance contract and regardless of whether the nature of the claim sounds in tort or in contract. *See* § 27.010(d).

Third, Pyles's and the James Appellants' argument suggests that the insurance contract exemption requires a legal action to be "based on" or "brought under" an insurance contract. But in the insurance contract exemption, the Legislature used the phrase "arising out of." § 27.010(d). The qualifying phrase "arising out of" in the insurance contract exemption contrasts with other phrases in the TCPA the Legislature purposefully used to qualify the term "legal action." In sections 27.003(a) and 27.005(b), the Legislature used the phrases "relates to," "based on," and "in response to" to qualify "legal action." §§ 27.003(a), 27.005(b). And in section 27.010(d), the Legislature used the phrase "brought under" the Insurance Code to qualify "legal action." 27.010(d). The text of the TCPA as a whole demonstrates the Legislature knew how to use narrower qualifying phrases, and could have limited the insurance contract exemption to legal actions "brought under" or "based on" an insurance contract. Conversely, the Legislature declined to use a broader qualifying phrase like "relates to." In the insurance contract exemption, the Legislature purposefully used the phrase "arising out of" and not "based on," "brought under," or "relates to." *See Cadena Comercial USA Corp.*, 518 S.W.3d at 325-26. Adopting Pyles's and the James Appellants' position would require us to legislate from the bench by judicially modifying the TCPA's text, which we may not do. *See Castleman v. Internet Money Ltd.*, No. 17-0437, 2018

WL 1975039, at *3 (Tex. Apr. 27, 2018); *Critz v. Critz*, 297 S.W.3d 464, 472 (Tex. App.—Fort Worth 2009, no pet.).

Fourth, a narrow construction of "arising out of" in section 27.010(d)'s insurance contract exemption would conflict with how Texas courts have construed "arise out of" in section 27.010(b)'s commercial speech exemption. The commercial speech exemption provides:

> (b) This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct *arises out of* the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

§ 27.010(b) (emphasis added). Other courts of appeals have construed "arises out of" in section 27.010(b) as relating to the defendant's motives in making the actionable statement or engaging in the actionable conduct. *See Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 88–89 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).[1] Our sister courts have thus concluded the Legislature used "arise out of" in the TCPA broadly to include statements and conduct ancillary to a commercial transaction. They have not construed "arising out of" narrowly to mean a statement or conduct that is based on or that comprises the commercial transaction itself. Thus, Pyles's and the James Appellants' construction would require arbitrarily giving different meanings to the same phrase used in the same section of the same statute.

### 2. *The Plain Meanings of "Arising Out Of" and "Insurance Contract"*

Although the TCPA does not define the qualifying phrase "arising out of," we are not without guidance. When a term is not statutorily defined, we typically look first to dictionary definitions to ascertain the term's plain meaning. *City of Richardson v. Oncor Elec. Delivery Co.*

---

[1] *See also Backes v. Misko*, 486 S.W.3d 7, 21 (Tex. App.—Dallas 2015, pet. denied) (adopting *Newspaper Holdings*); *Hicks v. Group & Pension Adm'rs, Inc.*, 473 S.W.3d 518, 531 (Tex. App.—Corpus Christi 2015, no pet.) (same); *Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *6 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.) (same).

*LLC*, 539 S.W.3d 252, 261 (Tex. 2018). The plain meaning of "arise" is "[t]o originate; to stem (from)" or "[t]o result (from)." BLACK'S LAW DICTIONARY 115. The different definitions of "arise" could support applying different tests that the Supreme Court of Texas has articulated in different contexts. When construing insurance contracts, the supreme court "has held that 'arise out of' means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (internal citation omitted).[2] Under the Texas Tort Claims Act, the supreme court has construed "arise out of" as "requir[ing] a certain nexus," or connection. *Delaney v. Univ. of Houston*, 835 S.W.2d 56, 59 (Tex. 1992). Under the Worker's Compensation statute, the supreme court has construed "arise out of" synonymously with "originating in." *State Office of Risk Mgmt. v. Martinez*, 539 S.W.3d 266, 276 (Tex. 2017). And, as previously noted, our sister courts have construed "arising out of" in the TCPA's commercial speech exemption as requiring that we consider the defendant's motives. *See, e.g.*, *Newspaper Holdings, Inc.*, 416 S.W.3d at 88–89.

The TCPA does not define "insurance contract," but the plain meaning of the term undoubtedly includes an insurance policy or agreement that governs the legal rights of and relationship between an insurer and insured regarding insurance benefits. *See* BLACK'S LAW DICTIONARY 814 (defining insurance, generally, as a contract in which one party promises to indemnify another against certain risks). We further note the Legislature's use of the term "insurance contract," as used in the phrase "a legal action . . . arising out of an insurance contract," does not limit our consideration only to whether there is, or is not, an insurance contract. We are

---

[2] *See Lancer Ins. Co. v. Garcia Holiday Tours*, 345 S.W.3d 50, 54 (Tex. 2011) ("The phrase 'arising out of' means 'originating from, having its origin in, growing out of or flowing from."); *see also Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co. of Wis.*, 189 F.2d 374, 378 (5th Cir. 1951) (stating "arising out of" is broader than other qualifying phrases like "due to").

aware of no cognizable cause of action for the mere existence of an insurance contract. Other facts (e.g., facts showing a breach or fraud), in addition to the insurance contract, are necessary to allege a cognizable cause of action involving an insurance contract. When considering whether a legal action "aris[es] out of an insurance contract," we therefore must consider not only the insurance contract, but also other alleged facts involving the insurance contract. *See Loaisiga*, 379 S.W.3d at 262 (explaining a "cause of action" means the underlying facts).

In sum, the TCPA's text indicates the Legislature did not intend "arising out of" in the insurance contract exemption to be as broad as "relates to." *Compare* § 27.010(d), *with* §§ 27.003(a), 27.005(b). Thus, "arising out of" in the insurance contract exemption requires something more than the mere presence of an insurance contract or a cause of action merely having any relationship to an insurance contract. But "arising out of" in the insurance contract exemption requires something less than a cause of action being "based on" or "brought under," "seeking benefits under," or "seeking recovery for breach of" an insurance contract. Consistent with how the supreme court and our sister courts have construed "arising out of" in various contexts, we construe "arising out of an insurance contract" as requiring that the insurance contract be a "but-for" or motivating cause of the alleged facts entitling the plaintiff to relief, or that the alleged facts entitling the plaintiff to relief have a nexus to or originate in a contractual relationship between an insurer and an insured for insurance benefits.

Our construction is consistent with the obvious purpose of the 2013 amendments to the TCPA, which was to exempt from the TCPA's dismissal procedure more legal actions directly involving the business of insurance. *See Fort Worth Transp. Auth. v. Rodriguez*, No. 16-0542, 2018 WL 1976712, at *9 n.6 (Tex. Apr. 27, 2018) ("[Legislative] history may be appropriate to give context to [courts'] construction."). In 2013, the Legislature broadened the TCPA's exemptions for legal actions involving the business of insurance in two ways. First, the Legislature

enlarged the commercial speech exemption to cover more legal actions related to the business of insurance. H.B. 2935, 83rd Leg. (Tex. 2013), at § 3 (expanding the commercial speech exemption to include "insurance services"). Second, in the 2013 amendments, the Legislature exempted from the TCPA two additional categories of legal actions: those "brought under the Insurance Code" and those "arising out of an insurance contract." *See id.* The TCPA's legislative history reinforces the textual indicia of the Legislature's intent to exempt from the TCPA's dismissal procedure additional categories of legal actions directly involving the business of insurance. *See* § 27.010(d); *Sullivan*, 488 S.W.3d at 299 (stating the best indication of legislative intent is the TCPA's text).[3] We now turn to applying these principles to Dr. Elkins's legal actions.

**B. Application**

Applying our construction of the phrase "arising out of an insurance contract" to this case, we conclude: (1) to the extent Dr. Elkins's causes of action involve the insurance claim made under the insurance policy, they are "legal actions arising out of an insurance contract"; and (2) to the extent Dr. Elkins's causes of action involve appellants' statements to the SAPD, Dr. Elkins did not satisfy her burden to establish they arise out of the insurance policy.

Before considering Dr. Elkins's causes of action, we note a significant difference between the two TCPA motions filed in the trial court. Pyles's TCPA motion sought dismissal of all of Dr. Elkins's causes of action against her. But the James Appellants' TCPA motion sought a dismissal of Dr. Elkins's causes of action only to the extent those legal actions involved their statements to the SAPD. In other words, the James Appellants have never posited that the insurance contract

---

[3] We have found no other legislative materials that provide further context to our construction. Despite the absence of such legislative materials, the intent of the insurance contract exemption is made obvious by the plain meaning of the TCPA's text. Furthermore, after Texas added the insurance contract exemption, Kansas and Oklahoma added identical exemptions to their analogous laws. *See* KAN. STAT. ANN. § 60-5320(h)(3) (2016); OKLA. STAT. tit. 12, § 1439(4) (2014). We have found no Kansas or Oklahoma case construing the phrase "arising out of an insurance contract."

exemption does not apply to Dr. Elkins's causes of action involving the insurance claim. Moreover, the TCPA requires us "to treat any claim by any party on an individual and separate basis." *Better Bus. Bureau of Metro. Dall., Inc. v. Ward*, 401 S.W.3d 440, 443 (Tex. App.—Dallas 2013, pet. denied). We therefore address separately Dr. Elkins's causes of action involving the insurance claim and her causes of action involving appellants' statements to the SAPD. *See id.*[4]

### 1. The Insurance Claim

We first consider Dr. Elkins's causes of action against Pyles that involve the insurance claim, which contained Pyles's Fraud Examination Report. According to Dr. Elkins's pleadings and evidence, Pyles prepared the Fraud Examination Report for the primary purpose of submitting the insurance claim. Pyles did not dispute Dr. Elkins's allegations and evidence. Instead, Pyles's motion states, "The Practice is insured by Travelers and filed a claim with Travelers." Her affidavit states, "Travelers was provided with a copy of the Fraud Examination Report," and "Travelers ultimately paid the Practice on its insurance claim related to Dr. [Elkins]'s misappropriation."

According to the pleadings and evidence, Pyles would not have made the complained-of statements in the insurance claim if there were no insurance policy, and the insurance contract motivated Pyles's allegedly defamatory, disparaging, and damaging statements that Dr. Elkins committed fraud and theft. The insurance policy has a close nexus to the facts Dr. Elkins alleges entitle her to relief; in addition to the insurance contract being a but for and motivating cause of the insurance claim, the complained-of statements to Travelers comprised the insurance claim that invoked an insured's legal rights under an insurance contract. The transaction was pursuant to the insurance policy, and the insurer–insured relationship was the context in which the complained-of

---

[4] *See, e.g.*, *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 340 (Tex. App.—San Antonio 2000, pet. denied) ("Each distinct publication of a defamatory statement inflicts an independent injury from which a defamation cause of action may arise.").

statements were made. Thus, those statements originated in the relationship between an insured and insurer under a contract for insurance benefits. Furthermore, it would be nearly impossible for Dr. Elkins to explain her case to a jury without reference to the insurance policy, and she would be entitled to rely on the insurance policy as proof of her claims. The insurance policy provides a theory of the defendants' motives for publishing allegedly false statements; explains why those statements were made to Travelers; and explains Travelers' response of further investigating Dr. Elkins, which Dr. Elkins complains contributed to her damages.

This case can be contrasted with *Tervita, LLC v. Sutterfield*, 482 S.W.3d 280 (Tex. App.—Dallas 2015, pet. denied). In *Tervita*, the plaintiff alleged his employer retaliated against him for filing a worker's compensation claim and made a false representation to him about what benefits were available to him under the insurance policy. *See id.* at 282. The complained-of statement in *Tervita* did not originate in any communication between an insurer and insured under an insurance policy; the statement originated in the context of an employer–employee relationship and merely related to an insurance policy. Although Pyles relies on *Tervita* to support her position, the *Tervita* court did not define the phrase "arising out of" or state what test courts should apply to determine whether a legal action arises out of an insurance contract. *Id.* at 285-86. We are not persuaded that *Tervita* is inconsistent with our holding or requires a different outcome in this case.[5]

We hold the insurance policy is a but for and motivating cause of the insurance claim, and that the insurance claim had a nexus to the insurance policy and originated in the contractual relationship between an insurer and an insured for insurance benefits. Thus, Dr. Elkins's causes of

---

[5] We are also unpersuaded by Pyles's contention that because the supreme court "denied" the petition for review in *Tervita*, that the supreme court must have agreed with the court of appeals' analysis. *See* TEX. R. APP. P. 56.1(b)(1), (c) (explaining the difference between "petition denied"—for lack of satisfaction with the court of appeals' opinion, but when error does not require correction or error correction is not important to the state's jurisprudence—and "petition refused"—for expressing that the principles in the court of appeals' opinion are correct and have the precedential value of a supreme court opinion).

action against Pyles involving the insurance claim are legal actions "arising out of an insurance contract." § 27.010(d). We must therefore affirm the trial court's order as to Dr. Elkins's causes of action against Pyles involving the Fraud Examination Report and the insurance claim.

### 2. *The SAPD Report*

Pyles and the James Appellants argue Dr. Elkins failed to prove their statements to the SAPD arose out of the insurance policy. We agree. Dr. Elkins pled in her response to the TCPA motions that the only reason Pyles and the James Appellants made statements to SAPD is because the insurance policy required them to do so. However, Dr. Elkins had the burden to establish the applicability of the insurance-contract exemption. *See Tervita, LLC*, 482 S.W.3d at 282. Dr. Elkins did not produce the insurance contract, did not provide any other evidence to support her allegation about the insurance policy, and expressly stated her allegation about the insurance policy was based only "on information and belief," which amounts to no evidence. *See Day Cruises Mar., L.L.C v. Christus Spohn Health Sys.*, 267 S.W.3d 42, 54 (Tex. App.—Corpus Christi 2008, pet. denied). We hold Dr. Elkins failed to satisfy her burden to establish that the insurance exemption applies to her causes of action involving appellants' statements to the SAPD.

### LEGAL ACTIONS NOT EXEMPTED BY THE TCPA

Other than the insurance contract exemption, Dr. Elkins did not dispute in the trial court, and does not dispute on appeal, that the TCPA otherwise applies to her legal actions against Pyles and the James Appellants. On appeal, Pyles and the James Appellants argue their statements to SAPD, even if false, were an exercise of their right of petition, a First Amendment right listed in the TCPA. We agree. *See Murphy USA, Inc. v. Rose*, No. 12-15-00197-CV, 2016 WL 5800263, at *3-*4 (Tex. App.—Tyler Oct. 5, 2016, no pet.) (mem. op.) (TCPA applies to statements made to police). We therefore proceed to consider whether Dr. Elkins met her burden under the TCPA.

If the TCPA applies, the plaintiff has the burden to present clear and specific evidence of a prima facie case for each element of each claim covered by the TCPA. *See In re Lipsky*, 460 S.W.3d at 586. Clear and specific evidence of a prima facie case for an element "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* at 590. "It is the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (internal quotation marks omitted). The TCPA "does not impose a higher burden of proof than that required of the plaintiff at trial." *Id.* at 591. When reviewing the record, we consider the pleadings and evidence in the light most favorable to Dr. Elkins. *See Spencer*, 2017 WL 993093, at *4.

In some of the following subsections, we discuss the evidence of each element of each claim as the evidence pertains to Dr. James, Jean, and Pyles individually. *See Ward*, 401 S.W.3d at 443. On appeal, the James Appellants do not challenge the Practice's vicarious liability for the acts of Dr. James, Jean, or Pyles. We therefore address each claim based on the individual's conduct and conclude with a summation of the claims the trial court should have dismissed and the claims the trial court properly did not dismiss.

## A. Intentional Infliction of Emotional Distress

"To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffman-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).

Pyles and the James Appellants challenge the "extreme and outrageous" element of Dr. Elkins's intentional infliction of emotional distress claims. "Whether a defendant's conduct is 'extreme and outrageous' is a question of law." *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex.

2001). "The mere fact that a defendant's conduct is tortious or otherwise wrong does not, standing alone, necessarily render [the conduct] 'extreme and outrageous.'" *Id.* Moreover, the "extreme and outrageous conduct" element must "not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines." *See Standard Fruit & Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) ("intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies").

We hold that although Pyles's and the James Appellants' alleged conduct of making false statements to the police may be considered wrong and tortious, the alleged conduct does not exceed conduct covered by other torts. *See Draker v. Schreiber*, 271 S.W.3d 318, 325 (Tex. App.—San Antonio 2008, no pet.) (intentional infliction of emotional distress claim unavailable where gravamen of plaintiff's claim was defamation); *Thrift v. Hubbard*, 974 S.W.2d 70, 77–81 (Tex. App.—San Antonio 1998, pet. denied) (explaining malicious criminal prosecution is a tort available to recover for emotional distress when a private individual makes a false police report resulting in prosecution). We therefore hold Dr. Elkins failed to meet her burden regarding her intentional infliction of emotional distress claims.[6]

**B. Defamation**

Pyles and the James Appellants contend Dr. Elkins's defamation claims must be dismissed because Dr. Elkins failed to present clear and specific evidence that they made the allegedly defamatory statements with "actual malice." "Defamation's elements include (1) the publication

---

[6] This case is distinguishable from *Spencer v. Overpeck*, in which this court held the challenge to the intentional infliction of emotional distress claim was premature. 2017 WL 993093, at *4. Here, appellants have challenged the intentional infliction of emotional distress elements in light of the "gap filler" principle; whereas in *Spencer*, the "only argument with regard to [the] intentional infliction of emotional distress claim is that the claim is a 'gap-filler' claim" that limits the *remedy* available. *See id.*

of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d at 593. The requisite degree of fault depends on the status of the plaintiff; "[a] private individual need only prove negligence, whereas a public figure or official must prove actual malice." *Id.* However, even where the plaintiff is a private individual, "[i]f the circumstances support application of [a] qualified privilege, the plaintiff must prove that the defendant acted with actual malice, rather than mere negligence, in publishing the statement." *Espinosa v. Aaron's Rents, Inc.*, 484 S.W.3d 533, 543 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

Pyles and the James Appellants argue the requisite degree of fault Dr. Elkins must prove is actual malice because reporting a crime to the police is qualifiedly privileged, and a plaintiff must show actual malice to overcome the qualified privilege. Dr. Elkins does not argue on appeal that the statements to SAPD are not qualifiedly privileged, and during the hearing on the TCPA motions, Dr. Elkins "agree[d] that the qualified privilege applies in talking to police." We agree the statements to SAPD are qualifiedly privileged. *See Pease v. Bembry*, No. 03-02-00640-CV, 2004 WL 1574243, at *2 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.) (reporting crime is qualifiedly privileged). We therefore proceed to analyze whether Dr. Elkins met her burden regarding the actual malice element.

"Actual malice in this context does not mean bad motive or ill will but rather knowledge of, or reckless disregard for, the falsity of a statement." *Greer v. Abraham*, 489 S.W.3d 440, 443 (Tex. 2016). To establish reckless disregard, a plaintiff must show the defendant "entertained serious doubts as to the truth of his [statement]." *Huckabee v. Time Warner Entm't Co. L.P.*, 19 S.W.3d 413, 420 (Tex. 2000) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). "[T]he mere failure to investigate the facts, by itself, is no evidence of actual malice." *Bentley v. Bunton*, 94 S.W.3d 561, 595 (Tex. 2002).

As to actual malice, Dr. Elkins's sole argument on appeal is, and her primary contention in the trial court was, that Dr. James, Jean, and Pyles reviewed only three years of her payment records and should have considered records during the entire time she worked for the Practice. We agree with Pyles and the James Appellants that an inadequate investigation is alone insufficient to show actual malice. *See id.* However, our standard of review is de novo, and we must determine whether appellants have demonstrated that the trial court committed reversible error based on the pleadings and evidence before the trial court when the trial court made its ruling. *See Reyna*, 2015 WL 4273265, at *2. Applying this standard, we conduct a de novo review of the pleadings and evidence of actual malice that was before the trial court. *See id.*

*1. Dr. James*

Dr. Elkins produced Dr. James's written statement to the SAPD, wherein Dr. James states Dr. Elkins was entitled under her employment contract only to 30% of her net production and that she stole money by taking 30% of gross production. Dr. Elkins produced her affidavit in which she swore her employment contract provided she was to be paid 30% of gross production. She also produced an email from Jeff Barrish, the Practice's accountant, stating Dr. Elkins's compensation package provides "she receives 30% . . . of production." Dr. Elkins's evidence, viewed in a light most favorable to her, shows Dr. James falsely stated to SAPD that Dr. Elkins was to be paid only 30% of net production. *See Spencer*, 2017 WL 993093, at *4. We therefore consider whether Dr. Elkins produced clear and specific evidence that, when Dr. James stated that Dr. Elkins was to be paid only 30% of net production under her employment contract, Dr. James either knew his statement was false or had a reckless disregard for the falsity of his statement.

Dr. Elkins presented evidence that the employment contract was one paragraph, Dr. James executed the contract by signing it (which Dr. James admits in his affidavit), the contract was given to Dr. James's attorney, and the contract mysteriously disappeared. Dr. James's affidavit states he

hired Dr. Elkins. Furthermore, Pyles's and Jean's affidavits demonstrate they both relied on Dr. James's purported knowledge of what was in the employment contract. A jury could reasonably infer that Dr. James, who hired Dr. Elkins and signed her one-paragraph employment contract, actually knew the terms of Dr. Elkins's compensation under the contract. *See El Paso Cty. v. Sunlight Enterps. Co., Inc.*, 504 S.W.3d 922, 930 (Tex. App.—El Paso 2016, no pet.) (holding signing contract raises inference of actual knowledge of terms).[7]

Furthermore, Dr. Elkins presented evidence that Dr. James reviewed her payment requests, signed her checks, and paid her 30% of gross production for twenty-three years, and that Dr. James paid another associate based on gross production and not net production, all of which could support an inference that Dr. James knew the terms of the employment contract. A jury reasonably could infer from this evidence, viewed in a light most favorable to Dr. Elkins, that Dr. James knew his statement to SAPD that the employment contract entitled Dr. Elkins only to 30% of net production was false or that he entertained serious doubts about the truth of his statement.

Pyles and the James Appellants argue we must accept as true a proffered employment contract they attached to the joint motion to reconsider. In her response to the joint motion, Dr. Elkins produced evidence showing the proffered contract was a forgery. We hold the evidence attached to the joint motion and Dr. Elkins's response is outside of our scope of review. No issue has been raised challenging the trial court's denial of the joint motion to reconsider. *See Pritchett v. Gold's Gym Franchising, LLC*, No. 05-13-00464-CV, 2014 WL 465450, at *2 n.2 (Tex. App.—

---

[7] *See also Verizon Corp. Servs. Corp. v. Kan-Pak Sys., Inc.*, 290 S.W.3d 899, 906 n.3 (Tex. App.—Amarillo 2009, no pet.) (holding jury could reasonably infer party to contract has actual knowledge of the terms, but merely being a party to contract does not conclusively establish actual knowledge); *Armendariz v. Mora*, 553 S.W.2d 400, 405 (Tex. Civ. App.—El Paso 1977, writ ref'd n.r.e.) (holding there was evidence that party who executed a contract knew of contract's terms in tortious interference case); *Nortex Drug Distrib., Inc. v. Sunset Trails, Inc.*, No. 05-98-00676-CV, 2000 WL 1230766, at *5 (Tex. App.—Dallas Aug. 31, 2000, no pet.) (mem. op., not designated for publication) (holding president of company assumed to have personal knowledge of high-level contract negotiations because of his position with company).

Dallas Feb. 4, 2014, pet. denied) (mem. op.). Moreover, there is no affirmative indication in the transcript of the hearing on the joint motion, or in the trial court's order denying the joint motion, that the trial court reconsidered the merits of the TCPA motions in light of the proffered employment contract. *Cf. Tooker v. Alief Indep. Sch. Dist.*, 522 S.W.3d 545, 553–54 (Tex. App.— Houston [14th Dist.] 2017, no pet.).[8] The James Appellants also argue Dr. James could have had a "conflicting interpretation" of the employment contract's payment terms, but that is an issue for the jury to decide. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) (if a contract is subject to two reasonable interpretations, "the contract is ambiguous, which creates a fact issue on the parties' intent"). Holding otherwise would require us to use the TCPA to deprive Dr. Elkins of her constitutional right to try her meritorious claims to a jury, which we may not do. *See* § 27.002 (stating the TPCA's purpose includes "protect[ing] the rights of a person to file meritorious lawsuits.").

### b. Jean & Pyles

Our holding that Dr. Elkins presented clear and specific evidence of actual malice as to Dr. James is based primarily on him having signed the employment contract with Dr. Elkins, executed another employment contract with similar compensation terms, and paid Dr. Elkins 30% of gross production for over twenty-three years. Dr. Elkins produced no evidence that Jean or Pyles knew the terms of the employment contract. Instead, as Dr. Elkins represents to this court in her brief, Jean and Pyles "simply took the word of Dr. James that the Contract . . . provided that [she] was to be paid on collections or net production." Thus, Dr. Elkins did not present clear and specific

---

[8] *Cf. also PNP Petroleum I, LP v. Taylor*, 438 S.W.3d 723, 730 (Tex. App.—San Antonio 2014, pet. denied) (citing TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS § 7.06[1] (3d ed. 2013)) (applying this rule in the summary judgment context)).

evidence showing Jean or Pyles knew their statements were false or entertained serious doubts about the truth of their statements to the SAPD.

## C. Business Disparagement

"To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about [her], (2) with malice, (3) without privilege, (4) that resulted in special damages[] to the plaintiff." *In re Lipsky*, 460 S.W.3d at 592 (quoting *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)).

Jean and Pyles challenge the malice element of Dr. Elkins's business disparagement claims. The malice element of a business disparagement claim may be proven by evidence that the defendant made a statement with knowledge of its falsity, reckless disregard, ill will, or intent to interfere with the economic interest of the plaintiff. *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987). As previously discussed, Dr. Elkins failed to present evidence that Jean or Pyles made their statements to the SAPD with knowledge of falsity or with reckless disregard for the falsity of the statements. As to ill will and intent to interfere with Dr. Elkins's economic interests, Dr. Elkins does not cite us to any evidence, and we have found no evidence in our independent review of the record, supporting an inference that Jean or Pyles had ill will toward her or intended to interfere with her economic interests by reporting the findings of the fraud investigation to the SAPD. We therefore conclude Dr. Elkins failed to meet her burden as to the business disparagement claims against Jean and Pyles.

Dr. James challenges the causation element of Dr. Elkins's business disparagement claim against him. The causation element of a business disparagement claim requires a plaintiff to prove the disparaging communication "played a substantial part in inducing third parties not to deal with the plaintiff, resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade, or loss of other dealings." *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223

S.W.3d 616, 628 (Tex. App.—Fort Worth 2007, pet. denied) (op. on reh'g). Dr. Elkins swore in her affidavit that she has suffered emotional distress and lost wages. But her affidavit does not attribute her lost wages or any pecuniary loss to her being fired, to the insurance claim, or to appellants' statements to the SAPD. Her affidavit also does not identify any sales, trade, or other dealings lost because of Dr. James's statements to the SAPD. We hold Dr. Elkins failed to produce clear and specific evidence regarding the causation element of her business disparagement claim against Dr. James, and therefore failed to meet her burden. *See id.*

## D. Civil Conspiracy

To recover for civil conspiracy, a plaintiff must show "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). "[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

The James Appellants challenge only the existence of an underlying tort. In the trial court, the James Appellants did not argue that the TCPA applied to Dr. Elkins's civil conspiracy claims against them. They therefore did not establish the TCPA's applicability to these claims in the trial court or preserve this issue for appeal. *See Avery v. Baddour*, No. 04-16-00184-CV, 2016 WL 4208115, at *6 (Tex. App.—San Antonio Aug. 10, 2016, pet. denied) (mem. op.). Furthermore, we have held that there is an underlying tort—a defamation claim against Dr. James—and Dr. Elkins seeks to hold the Practice and Jean liable for this tort. Based on the foregoing, we overrule the James Appellants' issue as to Dr. Elkins's civil conspiracy claims.

Pyles challenges the "meeting of the minds" element of Dr. Elkins's civil conspiracy claim, as she did in the trial court. The only remaining underlying tort is Dr. Elkins's defamation claim against Dr. James based on actual malice. As we previously noted, Dr. Elkins failed to present evidence that Pyles also acted with actual malice and presented no other evidence from which a jury could reasonably infer Dr. James and Pyles had a meeting of the minds to defame Dr. Elkins with actual malice. We hold Dr. Elkins failed to meet her burden as to her civil conspiracy claim against Pyles.

**E. Conclusion as to Dr. Elkins's Legal Actions**

The trial court properly denied Pyles's TCPA motion to dismiss Dr. Elkins's causes of action against her for the statements published in the insurance claim, which included the Fraud Examination Report. The trial court also properly denied the TCPA motions regarding Dr. Elkins's defamation claims against Dr. James and the Practice, through its alleged, unchallenged vicarious liability. However, the trial court erred by not dismissing Dr. Elkins's claims: (1) against Dr. James, individually and as an agent of the Practice, for business disparagement and intentional infliction of emotional distress, to the extent those claims involve Dr. James's statements to the SAPD; (2) against Jean, individually and as an agent of the Practice, for defamation, business disparagement, and intentional infliction of emotional distress, to the extent those claims involve Jean's statements to the SAPD; and (3) against Pyles, individually and as an agent of the Practice, for defamation, business disparagement, intentional infliction of emotional distress, and civil conspiracy, to the extent those claims involve Pyles's statements to the SAPD.[9]

---

[9] In a cross-point, Dr. Elkins argues that, if we conclude she failed to satisfy her burden as to any elements of claims, we should remand for the trial court to reconsider her motion for continuance and discovery. We hold Dr. Elkins waived this issue by citing no authority and failing to explain how a continuance and further discovery might allow her to overcome Pyles's or the James Appellants' challenges under the TCPA. *See Grace Creek Dev., LP v. REM-K Builders, Ltd.*, No. 12-16-00184-CV, 2017 WL 2351523, at *11 (Tex. App.—Tyler May 31, 2017, pet. denied) (mem. op.); *Harris v. Archer*, 134 S.W.3d 411, 447 (Tex. App.—Amarillo 2004, no pet.).

## CONCLUSION

We reverse the trial court's order denying the TCPA motions in part and render an order dismissing the following legal actions: (1) to the extent Dr. Elkins's causes of action against Pyles, individually and as an agent of the Practice, involve Pyles's statements to the SAPD, the claims of defamation, business disparagement, intentional infliction of emotional distress, and civil conspiracy; (2) to the extent Dr. Elkins's causes of action against Jean, individually and as an agent of the Practice, involve Jean's statements to the SAPD, the claims of defamation, business disparagement, and intentional infliction of emotional distress; and (3) to the extent Dr. Elkins's causes of action against Dr. James, individually and as an agent of the Practice, involve Dr. James's statements to the SAPD, the claims for business disparagement and intentional infliction of emotional distress. We remand this case to the trial court for a determination of attorneys' fees and costs as to these legal actions. We affirm the remainder of the trial court's order denying the TCPA motions.

Irene Rios, Justice