

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00301-CV

Armando **MONTELONGO**, Jr., Real Estate Training International, LLC, Performance Advantage Group, Inc., and License Branding, LLC,
Appellants

v.

Cecil G. **ABREA**, et al.,
Appellees

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-13094
Honorable Karen H. Pozza, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Patricia O. Alvarez, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: November 13, 2019

AFFIRMED

Appellants Armando Montelongo, Jr., Real Estate Training International, LLC ("RETI"), Performance Advantage Group, Inc. ("PAG"), and License Branding, LLC (collectively, "Appellants") appeal the trial court's order denying a motion to dismiss they filed pursuant to the Texas Citizens Participation Act ("TCPA"). Appellants' motion sought to dismiss "certain portions of" fraud, conspiracy to commit fraud, and fraudulent concealment claims asserted by appellees Cecil G. Abrea, et al. (collectively, "Appellees"). We affirm the trial court's order.

**BACKGROUND**

Montelongo is a real estate investor and the president and CEO of RETI and PAG. Both entities produce, sell, and conduct seminars on principles and methods of real estate investing. Montelongo is also the president of License Branding, LLC, a holding company for the trademarks and copyrights RETI and PAG use.

Appellees are 423 individuals from across the United States who claim to have suffered financial and emotional harm after purchasing one or more of Appellants' seminars or products. According to Appellees, even though Appellants refer to their seminar attendees as "students," the seminars "are not genuine educational offerings." Appellees contend that the seminars are a series of coercive "upsells" whose only purpose is to convince attendees to purchase additional seminars, products, and services from Appellants and people allied with Appellants.

One of the topics addressed at Appellants' seminars was the generation of cash flow through rental income. To that end, third-party affiliates of RETI set up booths at RETI seminars where they offered "'turn-key,' cash-flow properties" for purchase by attendees. Appellants' seminars also included presentations by Kurt Weinrich, who was associated with two individual retirement account ("IRA") custodian companies. Montelongo would introduce Weinrich onstage during seminars and tell attendees that "Weinrich's line of work included self-directed IRAs." Weinrich did not conduct sales transactions during his seminar presentations, but he informed attendees that he and his associated companies had a booth outside the main seminar room. Appellants maintain that they did not instruct or advise students to purchase products from Weinrich or his associated companies, that they did not have any "ownership, management, or controlling interest" in Weinrich's companies, and that they did not make any money from Weinrich's sales at their events.

Appellees filed the lawsuit that is the basis for this appeal on July 17, 2018.[1] In their original petition, they asserted theories of liability based on the Deceptive Trade Practices Act ("DTPA"), negligence, and negligent misrepresentation. As factual support for these claims, Appellees alleged that Appellants would, inter alia:

- "encourage[] [students] to pursue their real estate investments using [Montelongo's] allies, who also victimize the students";

- "engage in self-dealing transactions with the students (whose trust Montelongo cultivates), and expose the students, including [Appellees], to predation at the hands of [Appellants'] allies," including Weinrich and the turn-key property affiliates;

- "sell their products using coercion and deception";

- "engage in outright lies to sell their products, for example, creating fake personal success stories";

- "encourage students to transfer money in their employer-controlled or other secure retirement accounts to self-directed IRAs held by companies allied with [Appellants]";

- "instill fear in students to discourage them from questioning the [Appellants'] system, and attack or silence those who attempt to speak out";

- "carefully monitor the private Facebook groups to which they invite their past and present students, immediately deleting anything critical of not only [Appellants], but also of anyone else who is a member of the group—even if that person is known to have cheated other students of money—and forcing out those who continue to dissent"; and

- "use an affiliate to purchase properties in the area where the event will occur, and then, during the event, sell the properties to students at inflated prices without disclosing that [Montelongo] has an interest in the sales or receives a share of the profits."

---

[1] Some of the Appellees previously sued Appellants in federal court. The U.S. District Court for the Northern District of California dismissed this first lawsuit because the court lacked personal jurisdiction over Appellants. *See Skurkis v. Montelongo*, No. 16-cv-0972-YGR, 2016 WL 4719271, at *1 (N.D. Cal. Sept. 6, 2016). The U.S. District Court for the Western District of Texas dismissed a second lawsuit because the plaintiffs there did not plead their federal law claims with sufficient particularity and the court declined to exercise jurisdiction over their state law claims. *See Ocoro v. Montelongo*, No. 5:16-cv-01278-RCL, 2018 WL 3040582, at *1–7 (W.D. Tex. June 19, 2018).

Appellees' original petition also included sections entitled "Defendants' Fraudulent Scheme," "Defendants' Self-Interested Business Dealings with their Students," and "Defendants' Exposure of Students to Predation by their Allies."

Appellants filed their original answer on November 13, 2018. They also unsuccessfully sought the dismissal of Appellees' original petition under Texas Rule of Civil Procedure 91a. However, they did not seek to dismiss any part of the original petition pursuant to the TCPA.

On January 22, 2019, Appellees filed their first amended petition, which restated their DTPA, negligence, and negligent misrepresentation theories and added new theories of fraud, conspiracy to commit fraud, and fraudulent concealment. The new paragraphs alleging fraud and conspiracy to commit fraud listed the elements of those theories but did not include any additional substantive factual claims. The paragraphs alleging fraudulent concealment listed the elements of that theory and included supporting factual allegations that were essentially identical to factual allegations that appeared in Appellees' original petition.

On March 25, 2019, Appellants moved to dismiss "certain portions of the fraud claims, and the fraudulent concealment claims altogether, pursuant to the TCPA." Appellants filed their motion within 60 days of the filing of Appellees' first amended petition, but 132 days after they answered Appellees' original petition.[2] In response, Appellees argued, inter alia, that Appellants' motion was untimely because each of their fraud-based theories "arises out of factual allegations that were first made in the Original Petition, including all of the activities [Appellants] contend are protected under the TCPA." They also noted that certain paragraphs Appellants attacked in the

---

[2] The deadline to file a TCPA motion runs from "the date of service of the legal action." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b). It is unclear from the record when Appellants were served with Appellees' original petition. However, because "[a]n answer shall constitute an appearance of the defendant so as to dispense with the necessity for the issuance or service of citation upon him," Appellants' November 13, 2018 answer date is the latest possible start date for their deadline to challenge Appellees' original petition. TEX. R. CIV. P. 121; *Jordan v. Hall*, 510 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

motion were identical in both the original and first amended petitions, and argued that "[b]ecause the First Amended Petition does not alter the essential nature of this action, [Appellants'] time to bring a TCPA motion should be calculated from the date of service of the Original Petition."

The trial court denied Appellants' motion to dismiss without stating the basis for its ruling. This interlocutory appeal followed.

## ANALYSIS

### *Standard of Review*

We review a trial court's denial of a TCPA motion to dismiss de novo. *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 603 (Tex. App.—San Antonio 2018, pet. denied). In reviewing a ruling on a TCPA motion, "[w]e view the pleadings and evidence in the light most favorable to the nonmovant." *Id.*

We also review questions of statutory construction de novo. *State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018). Our objective is to "ascertain and give effect to the Legislature's intent as expressed by the language of the statute." *Id.* (internal quotation marks omitted). When a statute does not define a key term, we give that term its "common, ordinary meaning unless a contrary meaning is apparent from the statute's language." *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34 (Tex. 2017).

### *Applicable Law*

"The TCPA provides an expedited procedure for the early dismissal of groundless legal actions that impinge on First Amendment rights." *Greer v. Abraham*, 489 S.W.3d 440, 442 (Tex. 2016). Its purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits

for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. We construe the TCPA "liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b).

A motion to dismiss under the TCPA "must be filed not later than the 60th day after the date of service of the legal action." *Id.* § 27.003(b). The statute as it existed at the time this lawsuit was filed[3] defined a "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). Although the TCPA does not define the term "cause of action," we have explained that "[a] 'cause of action' consists of the operative facts entitling the plaintiff to the relief sought." *Elkins*, 553 S.W.3d at 604. Similarly, the Texas Supreme Court has held—albeit while reviewing a different statute—that "cause of action" means "the fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief." *Loaisiga v. Cerda*, 379 S.W.3d 248, 262 (Tex. 2012) (internal quotation marks omitted).

### *Application*

Appellants' TCPA motion is limited to "certain portions of" Appellees' fraud-based theories they contend "relate or are in response to [their] exercise of their right of free speech and/or right to freedom of association." Appellants contend that their motion challenged newly asserted "causes of action" and was therefore filed within the TCPA's 60-day deadline, because Appellees did not explicitly plead any fraud-based theories until they filed their first amended petition. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(6). Appellees respond that because the factual allegations Appellants sought to dismiss—namely, the "self-dealing," "predation," and "deletion of Facebook posts" allegations—were specifically pleaded in their original petition,

---

[3] The Legislature amended the TCPA on September 1, 2019. Nothing in the statute indicates that these amendments were intended to apply retroactively, and the parties have not argued that the amendments affect this appeal.

Appellants' deadline to challenge those allegations started running with the service of the original petition, not the amended petition.[4]

We recently addressed a similar situation in *Maldonado v. Franklin*, No. 04-18-00819-CV, 2019 WL 4739438, at *4–5 (Tex. App.—San Antonio Sept. 30, 2019, no pet. h.) (mem. op.). In *Maldonado*, the plaintiffs sued their neighbor for invasion of privacy, and their original petition listed seven specific factual allegations to support that theory. *Id.* at *3. After they amended their petition to add claims for intentional infliction of emotional distress, slander, libel, and trespass, the defendant filed a TCPA motion as to the new claims. *Id.* at *3–4. We concluded that the TCPA motion was not timely as to the intentional infliction of emotional distress and trespass claims because those theories were based on the "'same essential factual allegations as'" the original petition. *Id.* at *5 (quoting *Mancilla v. Taxfree Shopping, Ltd.*, No. 05-18-00136-CV, 2018 WL 6850951, at *3 (Tex. App.—Dallas Nov. 16, 2018, no pet.)).

The same result is appropriate here. Appellants' TCPA motion specifically challenges the portions of Appellees' fraud-based theories that are based on allegations of "predation," "self-dealing," and "deletion of Facebook posts." All three factual allegations appeared in Appellees' original petition and are simply repeated in the amended petition. In most cases, including in paragraphs Appellants specifically attack in their TCPA motion, those allegations are repeated verbatim from the original petition. Appellants have not asserted that the amended petition added any "new factual allegations of substantively different conduct than the previously alleged facts," nor have they disputed that the later-added fraud theories "could have been brought in the original petition based on any or all of the original factual allegations." *Id.* As a result, Appellants' deadline

---

[4] Appellees also contend their fraud-based theories implicate commercial speech to which the TCPA does not apply. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(2). Because this argument does not affect the outcome of this appeal, we assume without deciding that the TCPA applies to Appellees' claims. *See* TEX. R. APP. P. 47.1.

to challenge those factual allegations began running when they were served with Appellees' original petition. *See id.*

Appellants argue that this result will force litigants "to address each and every cause of action, however obscure, that could conceivably be supported by the allegations" and burden courts with "increasingly complex and ponderous motions." They also contend that "[m]erely alleging facts without asserting a cause of action requesting legal or equitable relief is not sufficient to constitute a 'legal action' under the TCPA." For two reasons, we are not persuaded by these arguments. First, under the definitions of "cause of action" this court and the supreme court have previously applied, the factual allegations underlying a party's theories of liability cannot be distinguished from that party's "cause of action" in the way Appellants have requested. *See Loaisiga*, 379 S.W.3d at 262; *Elkins*, 553 S.W.3d at 604. Appellees' original petition sought legal relief based on their "predation," "self-dealing," and "deletion of Facebook posts" allegations, and their amended petition sought legal relief based on those same allegations. Nothing in the TCPA's language compels us to treat those allegations as a new "legal action" simply because they are attached to a newly labeled theory of liability. TEX. CIV. PRAC. & REM. CODE § 27.001(6).

Second, and perhaps more importantly, the result in this case does not place any burden on litigants beyond that already established by the Legislature. *See id.* § 27.003. Our analysis requires litigants in Appellants' position to consider the factual allegations that have been asserted against them and decide, within the TCPA's 60-day timeline, whether those allegations are "based on" or "in response to" the exercise of rights protected by the TCPA. *Id.*; *Maldonado*, 2019 WL 4739438 at *3–5. Appellants' own motion, which only attacks Appellees' fraud-based theories to the extent that those theories rely on specifically enumerated factual allegations, demonstrates that performing this analysis does not require litigants to examine whether any unpleaded theories of liability could potentially be supported by those allegations.

Despite Appellants' argument to the contrary, this interpretation is consistent with the Legislature's mandate. While Appellants characterize Appellees' amendment as "sandbagging their claims," it is well-established that a trial court may—and under some circumstances, must—allow a plaintiff to amend his pleadings shortly before, during, or even after trial to conform to the evidence. *See, e.g.*, TEX. R. CIV. P. 63, 66; *Burns v. Dimmit Cty.*, No. 04-16-00593-CV, 2019 WL 2110710, at *17–19 (Tex. App.—San Antonio May 15, 2019, no pet. h.) (mem. op.) (trial court had discretion to allow pleading amendment after close of evidence). Under Appellants' argument, if those amendments assert a theory of liability that had not been explicitly labeled previously, they automatically restart the TCPA's 60-day deadline to file a motion to dismiss, even if the underlying factual allegations were at issue throughout the litigation. We have previously rejected a similar interpretation of the TCPA on the basis that it would "lead to absurd results not intended by the Legislature" and "negate the early dismissal envisioned by the Act." *In re Estate of Check*, 438 S.W.3d 829, 836–37 (Tex. App.—San Antonio 2014, no pet.).

Because Appellants filed their motion to dismiss more than 60 days after they were served with the petition that first alleged the facts they challenged, we hold that their motion was untimely. TEX. CIV. PRAC. & REM. CODE § 27.003(b); *Maldonado*, 2019 WL 4739438 at *5. Accordingly, the trial court did not err in denying Appellants' motion to dismiss. In light of our disposition of this issue, we need not consider the parties' remaining arguments. TEX. R. APP. P. 47.1; *see In re Estate of Check*, 438 S.W.3d at 837.

## CONCLUSION

We affirm the trial court's order.

Beth Watkins, Justice