

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-21-00582-CV

John **DOE**,
Appellant

v.

Juan J. **CRUZ**,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2021-CVF-001656-D4
Honorable Susan D. Reed, Judge Presiding

**OPINION ON MOTION FOR REHEARING**

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: November 29, 2023

AFFIRMED IN PART, REVERSED IN PART, RENDERED IN PART, AND REMANDED

Appellant John Doe[1] appeals from the trial court's order denying his motion to dismiss appellee Juan J. Cruz's counterclaims pursuant to the Texas Citizens Participation Act ("TCPA"). In the following analysis, we consider whether (1) Cruz's counterclaims are subject to a TCPA motion to dismiss, (2) Cruz established by clear and specific evidence a prima facie case for each essential element of his counterclaims, and (3) Doe established an affirmative defense or other

---

[1] A pseudonym.

grounds on which he is entitled to judgment as a matter of law, with respect to Cruz's counterclaims. On August 9, 2023, we issued an opinion and judgment affirming the trial court's judgment in part, reversing in part, rendering judgment dismissing all but Cruz's defamation counterclaim, and remanding for further proceedings. Doe and Cruz subsequently filed motions for rehearing. The court, on its own motion, withdraws its August 9, 2023 opinion and judgment and substitutes this opinion and judgment in their stead to address the quasi-judicial privilege. Consistent with our August 9, 2023 opinion and judgment, we affirm the trial court's order in part, reverse in part, render judgment dismissing all but Cruz's defamation counterclaim, and remand for further proceedings to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

### A.    Doe's Original Petition

On August 30, 2021, Doe filed an original petition against Cruz, whose law firm represents United Independent School District ("UISD") in Laredo. The petition's "Case Summary" states: "Defendant Juan J. Cruz is a homosexual pedophile that assaulted John Doe, a minor who was his employee and a student at one of the school districts where he serves as general counsel." The petition continues with a "Notice to School Districts Employing Juan J. Cruz," which states:

> Defendant Juan J. Cruz holds himself out [as] a school law expert dealing with minor children. Any school district that has Juan J. Cruz employed as general counsel is hereby on notice of his deviant proclivity to have homosexual intercourse and sexually assault minor children and should take appropriate actions to protect their students from Defendant Juan J. Cruz.

Doe alleged Cruz began "homosexual advances," including "licking his lips while staring provocatively" at Doe and giving "offensive touch[es] including massages" when Doe was sixteen years old. Doe further alleged Cruz "lured" Doe to work for him. According to Doe's original petition:

Cruz would furnish alcohol and Xanax to minor John Doe to make it easier for Defendant Cruz to sexually assault John Doe. Defendant Cruz would require John Doe to stay at his apartment in San Antonio and at his home . . . in Laredo, Texas so he could conveniently sexually assault him . . . .

Doe stated a cause of action, under the heading "Defendant Juan J. Cruz's Homosexual Sexual Assault and Battery of a Minor Child," in which he alleged as follows:

19.     John Doe was 16 years old when Defendant Cruz began homosexually assaulting him. At the time the cause of action accrued, the age of consent was seventeen (17) in the State of Texas. Defendant Juan J. Cruz used his position as a school attorney and the trust he gained from John Doe to commit acts of sexual assault and sexual battery against John Doe. . . .

20.     John Doe's status as a minor, coupled with Defendant Juan J. Cruz's position as his boss, lawyer and authority figure, allowed Defendant Cruz to exercise control and influence over John Doe. Using the power, authority and trust of his position, Defendant Juan J. Cruz homosexually assaulted and molested John Doe on countless occasions, for money. . . .

Doe also asserted causes of action for breach of fiduciary duty and intentional infliction of emotional distress.

## B.     Email to UISD Board Members and Its Superintendent

Doe's attorney emailed a copy of Doe's original petition to the superintendent and board members of UISD two days after the lawsuit was filed. The subject line of the email states, "Suit filed against UISD School Attorney Juan J. Cruz for Sexual Assault," and the body of the email states:

Good afternoon Superintendent Gonzalez and UISD Board,

A file-stamped copy of Plaintiff's Original Petition filed Monday against UISD school attorney Juan J. Cruz is attached for your review. The facts in the petition are very detailed, with dates and places. There is solid evidence including texts, photos and other conclusive proof substantiating the claims made therein.

This matter of public concern is being forwarded to you because it is understood that Mr. Cruz frequently visits UISD's schools where children are present, in order that you can take appropriate measures to safeguard the children under your care.

## C.    Doe's Amended Petition

Cruz filed an original answer, and thereafter Doe filed an amended petition. On the first page of the amended petition is a redacted photograph of Cruz in a swimming pool. A black square covers Cruz's body, except for his head and shoulders. The redacted photograph is captioned: "Powerful Evidence of Defendant Cruz'[s] Misconduct."[2]

## D.    Cruz's Counterclaims

Cruz filed an amended answer and counterclaims. Cruz "categorically denie[d] that he has ever had forcible sexual contact with any person at any time," and he "categorically denie[d] that he has ever had sexual contact of any kind with a minor." Cruz alleged Doe's counsel held personal animosity toward Cruz and asserted that the aim of Doe's lawsuit was harm to Cruz's reputation and legal practice.

Cruz's first counterclaim is entitled "Revenge Porn: Unlawful Disclosure or Promotion of Intimate Visual Material." Cruz asserted those involved in filing Doe's amended petition, which included the redacted photograph, committed a crime under section 21.16 of the Texas Penal Code. *See* TEX. PENAL CODE § 21.16(b) ("A person commits an offense if . . . without the effective consent of the depicted person and with the intent to harm that person, the person discloses visual material depicting another person with the person's intimate parts exposed or engaged in sexual conduct . . .").[3] Cruz also asserted Doe's amended petition, with the redacted photograph, "insinuat[es] that he is nude" and that "the preparation, filing, and prosecution of this revenge porn is civilly actionable" pursuant to Civil Practice and Remedies Code section 98B.001.

The second counterclaim is entitled "Hate Crime Reporting." Cruz asserted in this section that crimes "motivated by prejudice, hatred, or advocacy of violence must be reported" and "those

---

[2] Later, Doe filed a second amended petition, which includes another, similarly redacted photograph as an exhibit.
[3] Cruz incorrectly cites to section 21.46, which does not exist, but he quotes from Penal Code section 21.16.

responsible for the preparation, filing and prosecution of the revenge porn, which is a hate crime, should be reported to the Bureau of Identification and Records." The third counterclaim is entitled "Frivolous Pleadings." In this section, Cruz asserted Doe's lawsuit is groundless and the court should sanction Doe "and/or" his attorney. In his response to Doe's TCPA motion, Cruz argued his counterclaim for frivolous pleading was not subject to the TCPA; however, he does contest this matter on appeal.

After these sections, Cruz asserted counterclaims for defamation, tortious interference with contract, and intentional infliction of emotional distress ("IIED"). For his defamation claim, Cruz asserted Doe's attempted publication in the media and his publication to UISD board members of "this hate crime lawsuit" constituted libel. As to his tortious interference with contract claim, Cruz asserted Doe's email and service of pleadings and discovery on UISD board members constituted tortious interference with contract. For his IIED claim, Cruz asserted Doe intentionally or recklessly committed extreme and outrageous conduct that proximately caused severe emotional distress to Cruz.

**E.      Doe's TCPA Motion to Dismiss and Cruz's Response and Motion for Sanctions**

Doe then filed a motion to dismiss Cruz's counterclaims pursuant to the TCPA. Cruz filed a response, Doe filed a reply, and the parties attached exhibits to their filings.

Cruz attached an affidavit, in which he stated:

I know the true identity of plaintiff "John Doe" in this litigation. He is currently 22 years of age. I met him in November, 2018 when he was 19 years old at the Laredo Country Club gym. I did not know "John Doe" when he was 16 years old, as alleged. I had a continuous, consensual, adult relationship with "John Doe" from August 2019 to December 2019. . . . I never sexually assaulted "John Doe."

Doe included an affidavit with his reply in which he averred: "I was a minor student at United Independent School District, where Mr. Cruz served as general counsel when he started sexually assaulting me." Doe also stated: "When I was only 16 years of age, Mr. Juan Cruz began

his advances on me at the gym where I would exercise. Mr. Cruz's advances included licking his lips while staring provocatively at me and offensive touching, including massages of my arms and shoulders. I did not consent to this conduct." Next, Doe contended Cruz convinced Doe to work at his law firm and he alleged:

> Mr. Cruz would also furnish alcohol and Xanax to me, which enabled him to assault me sexually. Mr. Cruz would require me to stay at his apartment in San Antonio . . . and his home . . . in Laredo and sleep with him in his bed, where he would sexually assault me. Mr. Cruz groomed, pressured, and manipulated me to engage in this conduct; it was not consensual.

> . . . [S]exual acts continued until May 14, 2021, when Mr. Cruz again forced me to have sexual intercourse . . . and then paid me cash for the sex and acts performed. Mr. Cruz groomed, pressured, and manipulated me to engage in this conduct; it was not consensual.

> . . . Over an extended period, Mr. Cruz utilized his position as an attorney and my employer to require me to engage in sex with him, exploiting my trust in him, young age, and vulnerability.

With his TCPA motion, Doe requested court costs, attorney's fees, and sanctions.

On December 15, 2021, Cruz filed a motion for sanctions, which included an affidavit verifying Doe's employment documents that were in Cruz's possession. These documents indicate Cruz hired Doe when Doe was nineteen years old. Cruz contended Doe's factual claims were groundless because the employment documents in conjunction with Doe's affidavit disproved Doe's allegation that any alleged sexual assault occurred when Doe was a minor. Cruz requested sanctions in the amount of the attorney's fees he incurred in defending against Doe's TCPA motion and in disproving the "fundamental falsehood of minority."

## F.     The Trial Court's Decision

The trial court held hearings on Doe's TCPA motion to dismiss, and, thereafter, signed a written order denying the motion and granting Cruz's motion for sanctions. The order states:

> The Court finds that the central issue in [Doe]'s causes of action is his claimed minority at the time of the alleged sexual assault. This claim of minority is not

substantiated and therefore false.  If [Doe] were a minor, then his consent to such sexual assault would be irrelevant. . . .  In finding [Doe]'s claim of minority to be false, the Court closely reviewed [Doe]'s declarations.  Any sexual contact and engagement occurred when [Doe] was an adult, not a minor, and while employed by defendant Juan Cruz.  [Doe]'s petition nonetheless stated that it provided "notice" to school districts that hired Juan Cruz, which gave rise to his counterclaims in this litigation.  There was no evidence to prove that John Doe was a student when any sexual contact occurred.

The trial court awarded Cruz $20,790 in attorney's fees, which is the amount Cruz requested in his motion for fees incurred in defending against Doe's TCPA motion.  Doe timely appealed.

## THE TEXAS CITIZENS PARTICIPATION ACT

### A.    Applicable Law and Standard of Review

The purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."  TEX. CIV. PRAC. & REM. CODE § 27.002.  Under the TCPA, a party may file a motion to dismiss a legal action if the "legal action is based on or is in response to [that] party's exercise of the right of free speech, right to petition, or right of association."  *Id.* § 27.003(a).

The filing of a TCPA motion triggers a three-step resolution process, with shifting burdens. First, the movant must demonstrate that the TCPA applies.  *See id.* § 27.005(b).  To meet this burden, the movant must demonstrate that the nonmovant's legal action is based on or is in response to the movant's exercise of a right to associate, speak freely, or petition.  *Id.*  If the movant meets its initial burden, the burden then shifts to the party bringing the legal action to establish by clear and specific evidence a prima facie case for each essential element of its claim.  *Id.* § 27.005(c).  If the nonmovant satisfies that requirement, the burden shifts back to the movant to establish, as a matter of law, any valid affirmative defense.  *Id.* § 27.005(d).  In making a TCPA

determination, the trial court considers the pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and any supporting and opposing affidavits stating the facts on which the claim or defense is based. *Id.* § 27.006(a); *see* TEX. R. CIV. P. 166a (stating evidence trial court may consider in summary judgment proceeding). We review *de novo* whether the parties have met their respective TCPA burdens. *See Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

"[A] TCPA motion to dismiss is not a trial on the merits and is not intended to replace either a trial or the summary judgment proceeding established by the Texas Rules of Civil Procedure." *Stallion Oilfield Servs. Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 215 (Tex. App.—Eastland 2019, pet. denied); *see also West v. Quintanilla*, 573 S.W.3d 237, 243 n.9 (Tex. 2019) ("A finding that [non-movant] has met his TCPA burden does not establish that his allegations are true."). Therefore, we do not resolve any disputed facts in this lawsuit involving allegations of sexual assault.

## B. TCPA Applicability

The parties dispute all three TCPA steps. Under the first step, Doe had the initial burden to show that Cruz's "legal actions" were based on or were in response to Doe's exercise of his right to petition. To resolve this issue, we first consider whether Cruz's counterclaims were "legal actions" within the scope of the TCPA.

### 1. Legal Action

As relevant to this case, the TCPA applies "[i]f [Cruz's] legal action is . . . based on or is in response to [Doe's] exercise of the . . . right to petition . . . ." TEX. CIV. PRAC. & REM. CODE § 27.003(a). A "legal action" is defined as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." *Id.* § 27.001(6). "A 'legal action' can consist of an entire lawsuit or a subsidiary

action such as a counterclaim." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 131 (Tex. 2019) (citing TEX. CIV. PRAC. & REM. CODE § 27.001(6)).

Cruz's counterclaims for "revenge porn," defamation, tortious interference with contract, and IIED are undisputedly "legal actions" under this definition. Similarly, Cruz's pleading for sanctions against Doe under the heading "Frivolous Pleadings" is a TCPA "legal action" — a matter Cruz contested in the trial court but not on appeal. *Cf. KB Home Lone Star Inc. v. Gordon*, 629 S.W.3d 649, 652, 656 (Tex. App.—San Antonio 2021, no pet.) (holding motion for sanctions was a TCPA "legal action").

The parties disputed below and continue to dispute on appeal whether Cruz asserted a TCPA "legal action" under the heading "Hate Crime Reporting." Only a single paragraph follows this heading, which states in full:

> Crimes that are motivated by prejudice, hatred, or advocacy of violence must be reported. TEX. GOV'T CODE ANN. § 411.046 (West, Westlaw through 2021 Reg. Sess.). The filing of this hate crime lawsuit is motivated by prejudice, as described herein. Because this is revenge porn, those responsible for the preparation, filing and prosecution of the revenge porn, which is a hate crime, should be reported to the Bureau of Identification and Records.

Cruz's pleading cites Government Code section 411.046, which requires law enforcement agencies to report "crimes that are motivated by prejudice, hatred, or advocacy of violence" to the "bureau of identification and records." TEX. GOV'T CODE § 411.046(a), (b). The Government Code, however, does not provide a private right of action for violations of this section. *See Atkins v. Fort Worth Police Dep't*, No. 4:20-CV-00054-P-BP, 2020 WL 5134777, at *6 (N.D. Tex. Aug. 6, 2020), *report and recommendation adopted*, No. 4:20-CV-00054-P-BP, 2020 WL 5106856 (N.D. Tex. Aug. 31, 2020). Nowhere within the "hate crime reporting" paragraph does Cruz request relief against Doe, and no law enforcement agency — which the trial court could

- 9 -

conceivably order to report a crime — is a party to this litigation. The pleading states only that those responsible for what Cruz alleged is "revenge porn" litigation "should be reported."

We conclude Cruz's "hate crime reporting" claim does not constitute a "legal action" because it does not state a valid cause of action or otherwise request "legal, declaratory, or equitable relief" against Doe, the only defendant to Cruz's lawsuit. TEX. CIV. PRAC. & REM. CODE § 27.001(6). Therefore, it does not come within the TCPA's scope and is not subject to dismissal. *See id.* §§ 27.001(6), 27.003(a).

Having concluded Cruz's counterclaims for "revenge porn," defamation, tortious interference with contract, and IIED and his pleading for sanctions against Doe under the heading "Frivolous Pleadings" are "legal actions" within the scope of the TCPA, we next consider whether they were in response to Doe's right to petition.

### 2. Exercise of the Right to Petition

The TCPA allows for a motion to dismiss if the legal action is "based on or is in response to a party's exercise of the . . . right to petition." *Id.* The TCPA defines "exercise of the right to petition" as including "a communication in or pertaining to . . . a judicial proceeding." *Id.* § 27.001(4)(A)(i). The statute defines "communication" as including "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

We first consider Cruz's counterclaim for "revenge porn," which is based on the redacted photograph included within Doe's amended petition. In this counterclaim, Cruz complained of the inclusion of this photograph in a publicly available pleading. We hold Doe's amended petition, containing the redacted photograph, is "a communication in or pertaining to . . . a judicial proceeding." *Id.* § 27.001(4)(A)(i). Doe's amended petition is a "communication," as that term is defined, because it is a document comprised of written and visual content. *See id.* § 27.001(1);

*Perez v. Quintanilla*, No. 13-17-00143-CV, 2018 WL 6219627, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 29, 2018, no pet.) (mem. op.) (holding claims "relate to a communication" where allegation included the "unauthorized exploitation" of a book with a photograph on its cover). Further, Doe's communication was "in or pertaining to . . . a judicial proceeding" because it was filed in this lawsuit. TEX. CIV. PRAC. & REM. CODE § 27.001(4)(A)(i); *see KB Home Lone Star*, 629 S.W.3d at 655 (holding filing of a motion to compel arbitration was an exercise of the right to petition); *see also Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) (holding counsel's in-court statements amounted to an exercise of the right to petition). Because Cruz's "revenge porn" counterclaim is based on Doe's "exercise of the right to petition," it is subject to a TCPA motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a).

> As to Cruz's counterclaim for IIED, he argues on appeal that:

> [i]f Juan Cruz's revenge porn claim does not stop the publishing of redacted or unredacted, surreptitiously taken private photographs suggesting or depicting him nude, then his intentional infliction of emotional distress claim should provide a remedy.

As with Cruz's "revenge porn" claim, Cruz's IIED claim is based on the redacted photograph contained within Doe's amended petition, and, therefore, it too is based on Doe's exercise of the right to petition. *See id.*[4] Likewise, Cruz's request for sanctions based on "frivolous pleadings" is, as this heading suggests, based on Doe's amended petition. Specifically, in the "frivolous pleading" section, Cruz asserted Doe's lawsuit was groundless and the trial court should sanction Doe "and/or" his attorney. Because this request for sanctions is based on Doe's amended petition, it too is a legal action based on Doe's exercise of the right to petition. *See id.*

---

[4] Cruz argues, alternatively: "Or if Juan Cruz's defamation and tortious interference claims cannot prevent the sending of false and harassing communications to his clients, then his intentional infliction of emotional distress claim is necessary." Cruz's alternative basis for his IIED claim is also based on Doe's exercise of the right to petition for the same reasons that Cruz's defamation and tortious interference with contract claims are, which are discussed below.

Cruz's counterclaims for defamation and tortious interference with contract are also based on Doe's exercise of the right to petition but due to a different aspect of the TCPA's definition of "exercise of the right to petition." In addition to "a communication in or pertaining to . . . a judicial proceeding," *see id.* § 27.001(4)(A)(i), the TCPA defines "exercise of the right to petition" as "a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding." *Id.* § 27.001(4)(C). Unlike Cruz's other counterclaims, which are expressly premised on the filing of Doe's amended petition, Cruz's defamation and tortious interference with contract counterclaims are based on the email transmittal of Doe's original petition to UISD board members and its superintendent.[5]

Cruz does not dispute that his defamation and tortious interference counterclaims are based on a "communication." Nor does he dispute that the UISD board of trustees is a "governmental body." *Cf.* TEX. GOV'T CODE § 551.001(3)(E) (defining "governmental body" for purposes of the Texas open-meeting statute as including "a school district board of trustees"). Instead, Cruz argues that "based on the pleadings and the evidence," Doe's lawsuit does not involve the sexual assault of a minor and, consequently, "the communications in the email and attached original petition . . . were false as far as they alleged the sexual assault of a minor and therefore could not pertain to or interest a public school district like [UISD]."

---

[5] Cruz's counterclaim for tortious interference with contract is also based, as the counterclaim asserts, on Doe's "service of pleadings and discovery" on UISD; however, Cruz concedes the communications that comprise the service of discovery "pertained to a judicial proceeding" and, therefore, fall within the scope of the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(4)(A)(i). Additionally, Cruz's counterclaim for defamation is based on Doe's alleged "attempted publication in the media" of his lawsuit; however, neither party addresses this allegation in their appellate arguments, and, therefore, neither do we. *See* TEX. R. APP. P. 38.1(i), 47.1.

Cruz's contention that the allegations are false is not determinative of whether the TCPA applies. In fact, the Texas Supreme Court has expressly rejected this type of argument, when it stated in *Adams v. Starside Custom Builders, LLC*:

> We emphasize that whether Adams's colorful allegations were valid, partly valid, or completely concocted by a disgruntled resident with an axe to grind is not the question before us. Further litigation may seek those answers. The question at this stage is whether Adams's challenged statements involve a "matter of public concern" as defined by the TCPA.

547 S.W.3d 890, 897 (Tex. 2018); *see also QBE Americas, Inc. v. Walker*, No. 05-20-00439-CV, 2021 WL 1976459, at *5 (Tex. App.—Dallas May 18, 2021, no pet.) (mem. op.) ("[T]he truthfulness of the complained-of statements is not determinative of whether the TCPA applies."); *West*, 573 S.W.3d at 243 n.9 ("Quintanilla vigorously disputes many of West's factual allegations, but at this point we must decide only whether West has established a prima facie case by clear and specific evidence."). "When it is clear from the plaintiff's pleadings that the action is covered by the [TCPA], the defendant need show no more." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

Here, a review of the pleadings and record demonstrate that Doe's allegedly defamatory communications are "reasonably likely to encourage consideration or review of an issue" by UISD. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(4)(C). Cruz's law firm represents UISD pursuant to an at-will contract. Doe's email alleged "Cruz frequently visits UISD's schools where children are present," and his lawsuit alleged Cruz sexually assaulted a minor. If the allegations are true, then a communication relaying the allegations to UISD is "reasonably likely to encourage [re]consideration" of UISD's at-will contractual relationship with Cruz's law firm. *Cf. Mission Wrecker Serv., S.A., Inc. v. Assured Towing, Inc.*, No. 04-17-00006-CV, 2017 WL 3270358, at *4 (Tex. App.—San Antonio Aug. 2, 2017, pet. denied) (mem. op.) (holding communications regarding city contract were based on or related to a matter of public concern). Therefore, based

on the pleadings, Doe was exercising his right to petition, within the meaning of the TCPA. As a result, he was entitled to file a motion to dismiss challenging the sufficiency of Cruz's defamation and tortious interference with contract allegations. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a); *Adams*, 547 S.W.3d at 897 ("a review of the pleadings and the record demonstrates that Adams's alleged defamatory communications relate to Starside's services in the marketplace and to the community and environmental well-being of the Normandy Estates subdivision. Adams was therefore exercising his 'right of free speech,' as defined by the TCPA, when he made the challenged communications. As a result, he was entitled to file a motion to dismiss challenging the sufficiency of Starside's defamation allegations.").

Cruz contends, relatedly, that Doe's petition is "sham litigation filed in bad faith," and we should allow an exception to exclude TCPA applicability for "sham petitioning." We expressly rejected a request to create such a limitation in *Shopoff Advisors, LP v. Atrium Circle, GP*, and must do so again, here, under that binding precedent. *See* 596 S.W.3d 894, 907 (Tex. App.—San Antonio 2019, no pet.) ("Given that the Legislature explicitly defined the 'exercise of the right to petition' and did not see fit to include an exception for sham petitioning, we decline to hold that such an exception exists.").

## C. Prima Facie Case and Doe's Affirmative Defenses

Because Doe demonstrated the TCPA applies,[6] the burden shifted to Cruz to establish by clear and specific evidence a prima facie case for each essential element of his claims. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c). If Cruz did so, then his "legal actions," nevertheless, must

---

[6] Having concluded Cruz's counterclaims for "revenge porn," defamation, tortious interference with contract, and IIED and his pleading for sanctions against Doe under the heading "Frivolous Pleadings" are "legal actions" within the scope of the TCPA and were in response to Doe's right to petition, we do not reach the parties' arguments about whether the legal actions are based on or are in response to Doe's exercise of "the right of free speech." *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a); TEX. R. APP. P. 47.1.

be dismissed if Doe "establishe[d] an affirmative defense or other grounds on which [he] is entitled to judgment as a matter of law." *Id.* § 27.005(d). We review TCPA steps two and three together because we analyze Cruz's claims on a claim-by-claim basis and some claims require us to reach step three.

"Neither the TCPA nor common law define 'clear and specific evidence.'" *Straehla v. AL Glob. Servs., LLC*, 619 S.W.3d 795, 803 (Tex. App.—San Antonio 2020, pet. denied). "Clear" and "specific" "mean, for the former, 'unambiguous,' 'sure,' or 'free from doubt' and, for the latter, 'explicit' or 'relating to a particular named thing.'" *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). Clear and specific evidence requires "enough detail to show the factual basis" of the claim, but it does not "impose an elevated evidentiary standard," "categorically reject circumstantial evidence," or "impose a higher burden of proof than that required of the plaintiff at trial." *Id.* at 591. A prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* at 590. "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (citation omitted).

### 1. "Revenge Porn"

Cruz's "revenge porn" claim was brought pursuant to section 98B.002 of the Texas Civil Practice and Remedies Code. Under section 98B.002, a defendant is liable to a person depicted in "intimate visual material" if the defendant discloses the material without the effective consent of that person and if several other elements, not relevant here, are met. TEX. CIV. PRAC. & REM. CODE § 98B.002(a)(1). "Intimate visual material" is defined as "visual material that depicts a person: (A) with the person's intimate parts exposed; or (B) engaged in sexual conduct." *Id.* § 98B.001(2). "Intimate parts" is defined by reference to the Penal Code, which defines the term to mean "the naked genitals, pubic area, anus, buttocks, or female nipple of a person." *Id.*

§ 98B.001(1); TEX. PEN. CODE § 21.16(a)(1). "Visual material" includes a photograph. TEX. CIV. PRAC. & REM. CODE § 98B.001(1); TEX. PEN. CODE § 21.16(a)(5)(A).

The basis of Cruz's damages claim under section 98B.002 is the redacted photograph in Doe's amended petition. Cruz stated Doe identified him in the redacted photograph, which Cruz characterized as "intimate visual material." Cruz also sought injunctive relief because Doe "threatened to disclose the unredacted photographs and other intimate visual material." To show Doe's "threat," Cruz cited to Doe's amended petition, which states: "The unredacted photo (there are many more) . . . will be made available to the court and jury as this case proceeds to jury trial."

The redacted photograph depicts only Cruz's exposed head and shoulders and not "intimate parts," as that term is defined and incorporated into the definition of "intimate visual material." *See* TEX. CIV. PRAC. & REM. CODE § 98B.001(1); TEX. PEN. CODE § 21.16(a)(1). Therefore, we conclude Cruz did not establish by clear and specific evidence a prima facie case for each essential element of his "revenge porn" counterclaim under section 98B.002 because he did not establish a prima facie case that the redacted photograph depicts "intimate visual material."

However, in addition to damages under section 98B.002, Cruz also sued for injunctive relief under section 98B.004 and, as to that section, our analysis is more involved. Section 98B.004 provides for injunctive relief "to restrain and prevent the disclosure or promotion of intimate visual material with respect to the person depicted in the material." TEX. CIV. PRAC. & REM. CODE § 98B.004(a). In his amended petition, Doe stated: "The unredacted photo (there are many more), unredacted and unedited texts, and the overwhelming additional evidence will be made available to the court and jury as this case proceeds to jury trial." We conclude that, regardless of whether Cruz established a prima facie case under section 98B.004 for injunctive relief, his claim under this section must be dismissed because Doe established the affirmative defense of the judicial-proceedings privilege as a matter of law. *See id.* § 27.005(d).

As the Texas Supreme Court recently explained:

> The judicial-proceedings privilege is straightforward: Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made. . . . Although commonly applied in defamation cases, the privilege prohibits any tort litigation based on the content of the communication at issue.
>
> The judicial-proceedings privilege is an absolute privilege that covers any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case. The privilege facilitates the proper administration of justice by promoting full and free disclosure of information by participants in judicial proceedings.

*Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021) (internal quotations, citations, and ellipses omitted).

Here, the only disclosure of allegedly "intimate visual material" to which Cruz has directed us is Doe's assertion in his amended petition that unredacted photographs "will be made available to the court and jury as this case proceeds to jury trial." Thus, the only anticipated disclosures are disclosures to be made in this legal proceeding to the court and jury. If the judicial-proceedings privilege is available, Doe has established its applicability.

However, the question remains whether the privilege applies to statutory claims under Chapter 98B. Doe assumes that it does, and Cruz has not specifically contested its applicability to his Chapter 98B claim. We hold that the judicial-proceedings privilege applies to Cruz's Chapter 98B claim because (1) his claim is a tort seeking damages for reputational harm, (2) applying the privilege furthers the policy behind the privilege, and (3) the Supreme Court has applied the related attorney-immunity defense to a statutory claim within a statutory framework that, like Chapter 98B, does not expressly, or by necessary implication, abrogate the privilege.

First, "[t]he absolute [judicial-proceedings] privilege bars claims that are based on communications that are related to a judicial proceeding in which the claimant seeks damages for

- 17 -

reputational harm." *Rossa v. Mahaffey*, 594 S.W.3d 618, 627 (Tex. App.—Eastland 2019, no pet.); *see also Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 689 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("The judicial privilege applies to bar claims that are based on communications related to a judicial proceeding that seek defamation-type damages in name or in substance, i.e., damages for reputational harm."). The privilege has been held to apply in libel and slander suits and to "business-disparagement and tortious-interference claims, when those claims are based on an allegedly defamatory communication in a judicial proceeding." *Nath v. Baylor Coll. of Med.*, No. 01-20-00401-CV, 2022 WL 1038372, at *5 (Tex. App.—Houston [1st Dist.] Apr. 7, 2022, pet. denied) (mem. op.). Chapter 98B is contained within Title 4 of the Texas Civil Practice and Remedies Code, entitled "Liability in Tort." *See Landry's*, 631 S.W.3d at 46 ("Although [the judicial-proceedings privilege is] commonly applied in defamation cases, the privilege prohibits any tort litigation based on the content of the communication at issue."). Allowing the privilege for the Chapter 98B claim alleged here comports with the general allowance for the privilege against tort claims asserting reputational harm. Moreover, Chapter 98B allows for recovery of "actual damages," which can include damages for reputational harm. TEX. CIV. PRAC. & REM. CODE § 98B.003(a)(1); *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014). Cruz, through his "revenge porn" claim, seeks damages for harm to his reputation and legal practice, including for monetary loss caused by the loss of clients.

Second, the judicial-proceedings privilege "furthers public policy by promoting a 'complete and unbridled development of evidence in the settlement of disputes without fear of reprisals.'" *Collins v. Zolnier*, No. 09-17-00418-CV, 2019 WL 2292333, at *3 (Tex. App.—Beaumont May 30, 2019, pet. denied) (mem. op.) (quoting *Saxer v. Nash Phillips-Copus Co. Real Estate*, 678 S.W.2d 736, 740 (Tex. App.—Tyler 1984, writ ref'd n.r.e.)); *see also Landry's*, 631

S.W.3d at 46 ("The privilege facilitates the proper administration of justice by promoting 'full and free disclosure of information . . . by participants in judicial proceedings.'"). Depending on the circumstances, that policy is furthered if the privilege applies to Chapter 98B claims. It is not inconceivable that a photograph depicting "intimate visual material" may be relevant to a sexual assault claim and that a redacted photograph may not fully resolve disputed facts.[7]

Finally, our determination that the privilege can apply to Chapter 98B claims finds support, by analogy, from the Supreme Court's decision in *Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022). In that case, an attorney told opposing counsel she intended to use a nude photograph of opposing counsel's client that was inadvertently shared "as a poster-size demonstrative in [a] jury trial." *Id.* at 643. Opposing counsel's client sued the attorney under the Texas wiretap statute, which "grants a private right of action for '[a] person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of' certain statutes . . . ." *Id.* at 643 (citing TEX. CODE CRIM. PROC. art. 18A.502). The attorney moved for summary judgment, arguing she was immune because all claims stemmed from her role as an attorney. *Id.* at 644. The Supreme Court agreed, and determined the attorney's conduct was encompassed by the attorney-immunity defense and the Texas wiretap statute did not abrogate the defense.[8] *Id.* at 642-43. The Court stated:

> [W]hen conduct is prohibited by statute, the attorney-immunity defense is neither categorically inapplicable nor automatically available, even if the defense might otherwise cover the conduct at issue. In such cases, whether an attorney may claim the privilege depends on the particular statute in question.

---

[7] We caution, however, that improper use of sensitive material in litigation may be grounds for discipline, even if the judicial-proceedings privilege applies. *See* TEX. R. CIV. P. 13 (allowing for sanctions if a court filing is made for the purpose of harassment); *see also* TEX. CIV. PRAC. & REM. CODE §§ 10.001 ("Signing of Pleadings and Motions"), 10.002 (allowing sanctions for violating section 10.001).

[8] The attorney-immunity defense "is not merely the lawyer's version of the judicial-proceedings privilege, although there is considerable overlap." *Landry's*, 631 S.W.3d at 47. It is a "comprehensive affirmative defense protecting attorneys from liability to non-clients," and "generally applies when attorneys act in the uniquely lawyerly capacity of one who possesses the office, professional training, skill, and authority of an attorney." *Id.* (citations omitted).

*Id.* at 642. Attorney-immunity attached "because the Texas wiretap statute does not expressly, or by necessary implication, abrogate the immunity defense." *Id.* Likewise, here, we find nothing in Chapter 98B that expressly, or by necessary implication, abrogates the judicial-proceedings privilege.

Cruz's "revenge porn" claim for damages, pursuant to section 98B.002, must be dismissed because Cruz did not establish a prima facie case. Because Doe established the applicability of the judicial-proceedings privilege with respect to Cruz's "revenge porn" claim for injunctive relief, that claim also must be dismissed. Therefore, we reverse the trial court's order denying Doe's TCPA motion to dismiss Cruz's "revenge porn" claim and render judgment dismissing the counterclaim.

### 2.     Defamation

Doe argues he likewise established the judicial-proceedings privilege as an absolute defense to Cruz's defamation claim. We disagree, and hold the trial court correctly denied Doe's TCPA motion to dismiss Cruz's defamation counterclaim.

Defamation may occur through slander or libel. *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). Slander is an orally expressed defamatory statement, and libel is a defamatory statement expressed in written or other graphic form. *Id.* The elements of defamation "include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *Lipsky*, 460 S.W.3d at 593; *see* TEX. CIV. PRAC. & REM. CODE § 73.001 ("Elements of Libel").

Cruz asserted in his TCPA response: "[Doe,] acting through his lawyer and agent, intentionally communicated and published to third persons false, defamatory statements of facts, which are subject to objective verification, in his email and discovery to UISD and his publicly filed pleadings and discovery." Cruz asserted Doe's defamatory statements included the

allegations in his original petition that Cruz is a "pedophile," "homosexual sex offender," "sexual predator," and that Cruz has a "deviant proclivity to have homosexual intercourse and sexually assault minor children."

Doe responded that the judicial-proceedings privilege provides an absolute defense because the statements Cruz challenged were made in Doe's original petition, which cannot serve as a basis for a libel action. To an extent, Doe is correct because the statements in Doe's filed, original petition cannot form the basis of a defamation action. *See Landry's*, 631 S.W.3d at 46 ("Although commonly applied in defamation cases, the privilege prohibits 'any tort litigation based on the content of the communication' at issue.").[9]

However, Cruz also challenged the email transmittal of Doe's original petition to UISD board members and its superintendent. The *Landry's* Court considered "whether the judicial-proceedings privilege applies to statements to the media or the public in which parties or their attorneys publicize defamatory allegations raised in a lawsuit." *Id.* at 47-48. Prior to the Supreme Court's decision in *Landry's*, some intermediate appellate courts held that the judicial-proceedings privilege extended to publicization of a client's allegations, as long as the allegations arose from a judicial proceeding; other courts declined to extend the privilege that far, reasoning that the privilege "cannot be enlarged into a license to go about in the community and make false and slanderous charges against his court adversary and escape liability for damages caused by such charges on the ground that he had made similar charges in his court pleadings." *Id.* at 48 (quoting *De Mankowski v. Ship Channel Dev. Co.*, 300 S.W. 118, 122 (Tex. App.—Galveston 1927, no writ)). The Supreme Court found the latter view more persuasive. *Id.* Thus, in *Landry's*, delivery

---

[9] On appeal, Cruz does not argue that Doe's discovery requests to UISD contain actionable, defamatory statements; therefore, we do not consider the discovery requests. *See* TEX. R. APP. P. 38.1(i), 47.1.

of a pre-suit notice letter was protected by the judicial-proceedings privilege, but dissemination of that same letter to the media was not protected. *Id.* at 50.

Similarly, here, Doe "lost the judicial-proceedings privilege's protections when [he] repeated [his] . . . allegations for publicity purposes outside the protected context within which the statements originally were made." *Id.* (citation omitted). Nevertheless, Doe also asserts the UISD board is a quasi-judicial body; therefore, the email is absolutely privileged. We disagree.

The quasi-judicial privilege protects statements "made in the course of a quasi-judicial proceeding." *Vill. of Bayou Vista v. Glaskox*, 899 S.W.2d 826, 828 (Tex. App.—Houston [14th Dist.] 1995, no pet.) (citation omitted). Texas courts have developed a six-factor test to determine whether an entity "was acting in a quasi-judicial, or merely an administrative, capacity" at the relevant time. *Id*. at 829. Those factors include: "1) the power to exercise judgment and discretion; 2) the power to hear and determine or to ascertain facts and decide; 3) the power to make binding orders and judgments; 4) the power to affect the personal or property rights of private persons; 5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and 6) the power to enforce decisions or impose penalties." *Id.*; *Ross v. Heard*, No. 04-04-00110-CV, 2005 WL 357032, at *2 (Tex. App.—San Antonio Feb. 16, 2005, no pet.) (mem. op.).

Doe's TCPA motion stated, without support, that "the statements about which [Cruz] complains are protected by the . . . absolute quasi-judicial proceedings privilege." This is the only mention of the phrase "quasi-judicial" in his TCPA motion. His reply in support of the TCPA motion stated "[t]he board is a governmental body with investigative powers that owes duties to protect the students and families within its district. Based on this and UISD's public services contract with Cruz, the board has a cognizable legal interest in this judicial proceeding." In support of his argument, Doe presented Cruz's contract with UISD; however, he did not cite any evidence

or authority establishing the board's powers, duties, or investigative or hearing processes. *See Gallegos v. Escalon*, 993 S.W.2d 422, 425–26 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.) ("In considering whether the school board proceeding at which Gallegos made his statements qualifies as quasi-judicial, we consider which powers . . . the school board exercised."); *see e.g. Hernandez v. Hayes*, 931 S.W.2d 648, 651-52 (Tex. App.—San Antonio 1996, writ denied) (holding statements made during a school board grievance hearing were protected by the quasi-judicial privilege); *Vill. of Bayou Vista*, 899 S.W.2d at 829-30 (holding statements made during a board meeting were covered by the quasi-judicial privilege); *see also Parker v. Holbrook*, 647 S.W.2d 692, 696 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) (listing cases in which hearings were "deemed quasi-judicial in nature[.]").

In considering the six-factor test, Doe did not provide evidence that the UISD board could have, or did, hold the power to: exercise judgment and discretion; hear and determine or to ascertain facts and decide; make binding orders and judgments; affect the personal or property rights of private persons; examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and enforce decisions or impose penalties in response to Doe's email. *Vill. of Bayou Vista*, 899 S.W.2d at 829. Likewise, Doe did not present sufficient evidence that the UISD school board exercised the above-listed powers in response to Doe's email to the board. *See id.*; *cf. 5-State Helicopters, Inc. v. Cox*, 146 S.W.3d 254, 257 (Tex. App.—Fort Worth 2004, pet. denied) ("[C]ommunications made in contemplation of or preliminary to a quasi-judicial proceeding are privileged if they concern a matter that the quasi-judicial body is authorized to investigate and decide.") (citations omitted). Accordingly, Doe did not carry his burden to establish protection under the quasi-judicial privilege.

With this distinction made between conduct protected by the judicial-proceedings privilege and conduct not protected by it or the quasi-judicial privilege, we now review whether Cruz

established by clear and specific evidence a prima facie case for each essential element of defamation.[10]

The first element of defamation is the publication of a false statement of fact to a third party. *Lipsky*, 460 S.W.3d at 593. By his email, Doe's attorney published his allegations to third parties — UISD board members and its superintendent. Doe argues that Cruz failed to establish falsity. We hold otherwise. Cruz averred in his affidavit attached to his response to Doe's TCPA motion that he met Doe when Doe was nineteen years old, he never assaulted Doe, and their relationship was consensual. Although Doe contradicted Cruz's affidavit with his own; to survive a TCPA motion, Cruz only had to provide "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Lipsky*, 460 S.W.3d at 590; *see also Stallion Oilfield Servs.*, 592 S.W.3d at 215. Cruz's sworn denial specifically refutes Doe's allegations of sexual assault of minors, and sexual assault more generally, and the affidavit satisfies Cruz's burden of establishing a prima facie case for the essential element of falsity. *See Van Der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App.—Fort Worth 2017, pet. denied) (affidavit denying purportedly libelous statement satisfied TCPA burden to establish prima facie case for falsity).

The second element that the allegedly defamatory statement concerns the plaintiff, Cruz, is uncontested. *See Lipsky*, 460 S.W.3d at 593. The fourth element, damages, is likewise uncontested. *See id.* The third element, which concerns the degree of fault, is contested, and Doe contends he established the affirmative defense of qualified privilege. Because the third element and Doe's affirmative defense both consider whether an allegedly defamatory statement was made with malice, we consider them together.

---

[10] Although Doe's attorney emailed UISD board members and its superintendent, Doe does not contest that he may be liable for his attorney's actions. Because the matter is uncontested, we do not consider it further. *See* TEX. R. APP. P. 38.1(i), 47.1.

As to the third element, the requisite degree of fault depends on the status of the plaintiff. "A private individual need only prove negligence, whereas a public figure or official must prove actual malice." *Id.* "However, even where the plaintiff is a private individual, '[i]f the circumstances support application of [a] qualified privilege, the plaintiff must prove that the defendant acted with actual malice, rather than mere negligence, in publishing the statement.'" *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 610 (Tex. App.—San Antonio 2018, pet. denied) (quoting *Espinosa v. Aaron's Rents, Inc.*, 484 S.W.3d 533, 543 (Tex. App.—Houston [1st Dist.] 2016, no pet.)).

"A qualified privilege against defamation applies to good-faith communications 'upon any subject in which the author or the public has an interest or with respect to which the author has a duty to perform to another owing a corresponding duty.'" *Caracio v. Doe*, No. 05-19-00150-CV, 2020 WL 38827, at *5 (Tex. App.—Dallas Jan. 3, 2020, no pet.) (mem. op.) (citation omitted). A qualified privilege justifies a communication made without actual malice. *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 899 (Tex. 1970). To establish the defense of qualified privilege for purposes of meeting his TCPA burden, Doe was required to establish as a matter of law that he did not make the purportedly defamatory statements with actual malice, defined as knowledge of the statements' falsity or with reckless disregard for the truth. TEX. CIV. PRAC. & REM. CODE § 27.005(d); *Spencer v. Overpeck*, No. 04-16-00565-CV, 2017 WL 993093, at *7 (Tex. App.—San Antonio Mar. 15, 2017, pet. denied) (mem. op.).

For purpose of our analysis, we assume without deciding that Cruz must establish a prima facie case for Doe's actual malice. *See Spencer*, 2017 WL 993093, at *8 n.5 (assuming higher standard applied for purposes of TCPA analysis). "[A]ctual malice concerns the defendant's attitude toward the truth, not toward the plaintiff." *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 165 (Tex. 2004). "The actual malice standard requires that a defendant have, subjectively,

significant doubt about the truth of his statements at the time they are made." *Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002).

The gist of Doe's allegations is that Cruz sexually assaulted Doe when Doe was a minor. *See D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (explaining importance of assessing publication's gist in evaluating defamation claim). If, as Cruz avers, Doe was in fact an adult when the two met, we can infer that Doe had actual knowledge that his allegations of Cruz's sexual assault of a minor were false. *See Spencer*, 2017 WL 993093, at *7; *cf. Bentley*, 94 S.W.3d at 602 (holding actual malice proved by clear and convincing evidence based, in part, on evidence that defendant "expressed doubt to a friend that there was any basis for the charges he was making"). Additionally, Cruz averred that Doe was asked to resign his employment with Cruz's law firm after Doe was discovered "using a company card for student loan payments and to withdraw cash." *See Bentley*, 94 S.W.3d at 596 (explaining motive may be considered in proving a defendant's state of mind).

At this stage, Cruz's affidavit is sufficient evidence to establish a prima facie case for Doe's actual malice. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c). Further, we conclude Doe did not establish as a matter of law that he did not make the purportedly defamatory statements with actual malice, so as to meet his TCPA burden to establish the defense of qualified privilege. Therefore, we affirm the trial court's denial of Doe's TCPA motion to dismiss Cruz's counterclaim for defamation.

### 3. Tortious Interference with Contract

The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Cruz sued for tortious

interference with contract and sought injunctive relief. He did not plead for damages, and his briefing couches his request for relief in terms of restraining future harm. Cruz, nevertheless, asserted in his affidavit: "I am no longer personally interacting with UISD client representatives and have delegated UISD legal matters to other members in my firm. This has caused economic injury to me and my law firm." Cruz also attached to his TCPA response the legal services contract between J. Cruz & Associates, LLC and UISD. This contract "is strictly on an at-will basis," and it provides for a schedule of fees, including hourly fees for legal services performed by unspecified attorneys in the law firm.

To the extent Cruz seeks to establish a prima facie case for the element of actual damages, we hold his affidavit and the law firm's contract with UISD do not establish actual damages by clear and specific evidence. Cruz's statement that "I am no longer personally interacting with UISD client representatives and have delegated UISD legal matters to other members in my firm," does not establish damages because the law firm's contract with UISD provides for legal services to be performed by unspecified attorneys and not Cruz personally. Cruz has not provided additional information by which we could infer harm. Cruz's assertion, "[t]his has caused economic injury to me and my law firm," is conclusory and devoid of specific facts illustrating how Doe's purported tortious interference caused economic injury. *See Lipsky*, 460 S.W.3d at 592-93 (holding general averments of direct economic loss and lost profits, without more, do not satisfy the TCPA's requirement of "clear and specific evidence").

Cruz places more emphasis on anticipated future harm, and he asserts in his TCPA response: "Injunctive relief is an appropriate remedy against tortious interference." While this statement may be true in some circumstances, Cruz has not argued, let alone "provide[d] enough detail to show the factual basis" for each element required to obtain injunctive relief. *See Lipsky*, 460 S.W.3d at 591; *cf. Mission Wrecker Serv., S.A., Inc.*, 2017 WL 3270358, at *5 (holding

plaintiff failed to establish prima facie case for breach of contract based on general allegations in petition without specific analysis of contract provisions).  Among the elements which Cruz has not argued or established is "a probable, imminent, and irreparable injury" absent an injunction.  *Argo Group US, Inc. v. Levinson*, 468 S.W.3d 698, 700-01 (Tex. App.—San Antonio 2015, no pet.).

Because Cruz failed to establish a prima facie case for each element of his tortious interference counterclaim, we reverse the trial court's order denying Doe's TCPA motion to dismiss this counterclaim and render judgment dismissing the claim.

### 4.      Intentional Infliction of Emotional Distress

To recover damages for IIED, a plaintiff must establish: (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe.  *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).  However, IIED is a "gap-filler" tort, "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress."  *Id.* at 447.  The tort's "clear purpose" is "to supplement existing forms of recovery by providing a cause of action for egregious conduct that might otherwise go unremedied."  *Id.* (citation omitted).  "Properly cabined, the tort simply has no application when the actor intends to invade some other legally protected interest, even if emotional distress results."  *Id.* (citation omitted) (internal quotation marks omitted).  Thus, "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available."  *Id.*; *see Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 814 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020) ("[T]he plaintiff cannot pursue its intentional-infliction claim regardless of the success or failure of its alternative claim.").

Cruz did not allege in his petition or TCPA response any basis for his IIED claim other than those asserted for his "revenge porn," defamation, and tortious interference with contract claims. He also did not explain how any of his evidence supported an independent IIED claim. Because the factual basis of Cruz's IIED claim is the same as his alternative claims, the gravamen of Cruz's complaint is his alternative claims of "revenge porn," defamation, and tortious interference with contract. *See Hoffmann-La Roche*, 144 S.W.3d at 447. Consequently, Cruz did not present evidence of a prima facie case on each essential element of his IIED claim. *See Patel v. Patel*, No. 14-18-00771-CV, 2020 WL 2120313, at *10 (Tex. App.—Houston [14th Dist.] May 5, 2020, no pet.) (mem. op.) (in TCPA appeal, holding plaintiff's IIED "claim fails because it is a gap-filler tort and there is no gap to fill"); *Robert B. James, DDS*, 553 S.W.3d at 610 (holding plaintiff did not meet TCPA burden regarding IIED claim because alleged conduct underlying IIED claim "d[id] not exceed conduct covered by other torts"). Therefore, we reverse the trial court's order denying Doe's TCPA motion to dismiss as to Cruz's IIED claim and render judgment dismissing the claim.

## 5. Frivolous Pleading

Doe moved for dismissal of Cruz's "frivolous pleadings" counterclaim in his TCPA motion. Cruz, in his response, contested whether this portion of his pleading was subject to the TCPA, but he did not attempt to establish a prima facie case as to this claim. On appeal, Cruz does not dispute that the "frivolous pleadings" section of his lawsuit amounts to a "legal action," within the meaning of the TCPA, and he now attempts to establish a prima facie case based on the evidence he submitted with his TCPA response.

"Typically, when a non-movant does not attempt to make the requisite evidentiary showing, the reviewing court will render judgment dismissing the non-movant's claims." *Reeves v. Harbor Am. Cent., Inc.*, 631 S.W.3d 299, 309 (Tex. App.—Houston [14th Dist.] 2020, pet.

denied). A court may remand in "the interest of justice," when, for example, it appears the trial court did not actually consider the motion as to the merits or as it relates to a particular party. TEX. R. APP. P. 43.3(b); *see Reeves*, 631 S.W.3d at 309-10 (remanding when non-movant represented that trial court only asked for briefing on TCPA's applicability and trial court's order states "there is no 'second step' analysis").

Cruz has neither argued that the interests of justice require a remand nor provided us with any reason to depart from the typical requirement that we render the judgment the trial court should have rendered. *See* TEX. R. APP. P. 43.3; *Reeves*, 631 S.W.3d at 309-10. Here, that judgment is an order dismissing Cruz's "frivolous pleadings" claim because he did not establish by clear and specific evidence a prima facie case for each essential element of his claim for sanctions based on Doe's purportedly "frivolous pleadings." *See Elite Auto Body LLC*, 520 S.W.3d at 206 ("While [non-movant] attempts on appeal to recharacterize its affidavit as sufficing to survive dismissal, that proof falls below the element-by-element, claim-by-claim exactitude required by the TCPA and the Texas Supreme Court's leading guidance on this standard, *In re Lipsky*[, 460 S.W.3d at 586-97]."). We therefore reverse the trial court's order denying Doe's TCPA motion to dismiss Cruz's counterclaim for "frivolous pleadings" and render judgment dismissing the claim.

## IV. Attorney's Fees, Court Costs, and Sanctions

Doe challenges the award of attorney's fees to Cruz and the denial of attorney's fees, court costs, and sanctions to Doe.[11]

---

[11] On appeal, Cruz asserted, "if this Appellate Court affirms the denial of the motion to dismiss filed by 'John Doe,' it cannot by interlocutory appeal consider its frivolity and the associated attorneys' fees award." We have jurisdiction to consider attorney's fees, costs, and sanctions because the trial court awarded fees to Cruz pursuant to the TCPA and denied Doe's request for costs, fees, and sanctions pursuant to the TCPA in the trial court's order denying Doe's TCPA motion; we exercise our jurisdiction over these issues in the interest of judicial economy. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) (authorizing an appeal from an interlocutory order that "denies a motion to dismiss filed under [the TCPA]"); *D Mag. Partners, L.P.*, 529 S.W.3d at 442 (addressing attorney's-fees issue in interlocutory appeal from denial of TCPA motion "in the interest of judicial economy").

Section 27.009 of the TCPA provides in full:

(a) Except as provided by Subsection (c), if the court orders dismissal of a legal action under this chapter, the court:

   (1) shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action; and

   (2) may award to the moving party sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

(b) If the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party.

(c) If the court orders dismissal of a compulsory counterclaim under this chapter, the court may award to the moving party reasonable attorney's fees incurred in defending against the counterclaim if the court finds that the counterclaim is frivolous or solely intended for delay.

TEX. CIV. PRAC. & REM. CODE § 27.009.

The trial court ordered that "the motion for sanctions for frivolous TCPA motion to dismiss filed by Juan Cruz is granted," and it determined Doe's TCPA motion "was frivolous or solely intended to delay." Further, the trial court stated in its order:

   The Court finds that the central issue in [Doe]'s causes of action is his claimed minority at the time of the alleged sexual assault. This claim of minority is not substantiated and therefore false. If [Doe] were a minor, then his consent to such sexual assault would be irrelevant. . . . In finding plaintiff's claim of minority to be false, the Court closely reviewed [Doe]'s declarations. Any sexual contact and engagement occurred when plaintiff was an adult, not a minor, and while employed by defendant Juan Cruz. [Doe]'s petition nonetheless stated that it provided "notice" to school districts that hired Juan Cruz, which gave rise to his counterclaims in this litigation. There was no evidence to prove that John Doe was a student when any sexual contact occurred.

As to the trial court's attorney's-fees award to Cruz, TCPA section 27.009(b) allows for an award of reasonable attorney's fees to the responding party "[i]f the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay." *Id.* § 27.009(b). We

review a trial court's decision to award fees under section 27.009(b) for an abuse of discretion. *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without regard to guiding principles. *Id*.

"Frivolous" is not defined in the TCPA, "[b]ut numerous courts have noted that its common understanding contemplates that 'a claim or motion will be considered frivolous if it has no basis in law or fact and lacks a legal basis or legal merit.'" *Jones v. Frisco Fertility Ctr., PLLC*, No. 05-21-00008-CV, 2022 WL 17248837, at *8 (Tex. App.—Dallas Nov. 28, 2022, pet. denied) (quoting *Sullivan*, 551 S.W.3d at 857). Having rendered judgment granting Doe's TCPA motion to dismiss Cruz's claims for "revenge porn," tortious interference with contract, IIED, and "frivolous pleadings" and having limited the conduct that may form the basis of Cruz's defamation claim to only the email and the attached amended petition sent to UISD board members and its superintendent, we cannot say that Doe's TCPA motion is "frivolous." *See, e.g.*, *Heavenly Homes of S. Tex., LLC v. Infinity Custom Constr., LLC*, No. 13-21-00298-CV, 2022 WL 2069232, at *8 (Tex. App.—Corpus Christi–Edinburg June 9, 2022, no pet.) (mem. op.) ("Given our determination herein that the motion to dismiss should have been granted in part, we further conclude that the motion to dismiss was not frivolous or solely intended to delay.").

We also cannot say Doe's motion to dismiss was filed for the purpose of causing delay. Doe filed his TCPA motion within a week of Cruz filing his counterclaims; a hearing on the motion was set within sixty days of the motion; and the trial court decided the matter within ninety days — all within statutory deadlines. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003(b), 27.004(a), 27.005(a).

Finally, in our preceding analysis, we applied the TCPA three-step process to determine whether Doe's TCPA motion to dismiss should have been granted or denied. *See id.* § 27.005(b),

(c), (d); *Dall. Morning News*, 579 S.W.3d at 377 (specifying *de novo* review). We have not resolved any disputed facts. *Davis*, 2020 WL 5491201, at *12 (reiterating court's TCPA determination "is not a merits determination"); *see also Stallion Oilfield Services*, 592 S.W.3d at 215 (holding, "a TCPA motion to dismiss is not a trial on the merits and is not intended to replace either a trial or the summary judgment proceeding established by the Texas Rules of Civil Procedure"). In other words, we have not — and the trial court should not have — determined the "the central issue" of the claims or required Doe to substantiate or prove his allegations at this stage.[12]

Under these circumstances, we hold the trial court abused its discretion by determining Doe's TCPA motion "was frivolous or solely intended to delay" and by awarding Cruz attorney's fees. We therefore reverse the trial court's award of attorney's fees to Cruz.

As to Doe's requests, TCPA section 27.009(a) provides as follows:

Except as provided by Subsection (c), if the court orders dismissal of a legal action under this chapter, the court:

(1) shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action; and

(2) may award to the moving party sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

TEX. CIV. PRAC. & REM. CODE § 27.009(a). Subsection (c) provides:

If the court orders dismissal of a compulsory counterclaim under this chapter, the court may award to the moving party reasonable attorney's fees incurred in defending against the counterclaim if the court finds that the counterclaim is frivolous or solely intended for delay.

*Id.* § 27.009(c).

---

[12] We must apply the TCPA "*as actually written*." *Long Canyon Phase II & III Homeowners Ass'n, Inc. v. Cashion*, 517 S.W.3d 212, 224-25 (Tex. App.—Austin 2017, no pet.) (Pemberton, J., concurring).

"Thousands of statutory provisions use the phrase 'except as provided in . . .' followed by a cross-reference in order to indicate that one rule should prevail over another in any circumstance in which the two conflict . . . ." *Cyan, Inc. v. Beaver Cnty. Employees Ret. Fund*, 138 S. Ct. 1061, 1070 (2018). Here, the clause "Except as provided by Subsection (c)" and the cross-reference to subsection (c) indicates that subsection (a) applies, unless there is any conflict with subsection (c), in which case subsection (c) applies. Because the only such conflict concerns attorney's fees related to compulsory counterclaims, subsection (a) applies in all other respects. Subsection (a) contains mandatory language as to court costs. *See 1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 377 (Tex. App.—El Paso 2022, no pet.) (stating as to section 27.009(a)(1): "The TCPA makes such an award mandatory . . . ."). Therefore, we instruct the trial court that, upon remand, it shall award to Doe court costs incurred in defending against Cruz's counterclaims for "revenge porn," tortious interference with contract, IIED, and "frivolous pleadings." *See* TEX. CIV. PRAC. & REM. CODE § 27.009(a). The trial court also is instructed, upon remand, to consider whether to sanction Cruz and whether to award Doe attorney's fees pursuant to subsections (a)(2) and (c), respectively. *See id.* § 27.009(a)(2), (c).[13]

## CONCLUSION

We affirm the trial court's order denying Doe's TCPA motion to dismiss Cruz's counterclaim for defamation and Cruz's "Hate Crime Reporting" section of his pleading. We reverse the trial court's order in all other respects. We render judgment granting Doe's TCPA motion to dismiss Cruz's claims for "revenge porn," tortious interference with contract, IIED, and "frivolous pleadings," and we render judgment dismissing those claims. We remand for further proceedings consistent with this opinion, including for the trial court to award Doe court costs,

---

[13] Doe and Cruz each also filed motions for sanctions in this appeal. We deny the parties' motions for sanctions, and we deny Doe's request, stated in his reply brief, to strike portions of Cruz's appellee's brief.

pursuant to section 27.009(a)(1) of the TCPA, and for consideration of sanctions, pursuant to section 27.009(a)(2), and attorney's fees, pursuant to section 27.009(c).

Lori I. Valenzuela, Justice